[Civ. No. 18145. Third Dist. Sept. 4, 1979.]

WEST FOODS, INC., Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant.

## COUNSEL

George Deukmejian, Attorney General, L. Stephen Porter, Assistant Attorney General, Thomas E. Warriner and Richard M. Ross, Deputy Attorneys General, for Defendant and Appellant.

Littler, Mendelson, Fastiff & Tichy and Kathleen M. Kelly for Plaintiff and Respondent.

## OPINION

**PARAS, J.**—Defendant California Unemployment Insurance Appeals Board (Board) appeals from a judgment commanding it to vacate its decision allowing unemployment benefit payments to employees of West Foods, Inc. (West) and to issue a new decision denying the claims and eliminating charges to West's reserve account.

The facts are not in dispute. West operates a greenhouse facility in Ventura in which mushrooms are grown in temperature and humidity

controlled rooms. There are 210 employees at the facility, 85 of whom are pickers paid on a piecerate basis. Cultivation is constant year-round; there is no peak season for mushrooms.

In 1976, the United Farm Workers Union (Union) was the representative of West's employees. On August 30, the Union called a strike, and picketed until a collective bargaining agreement was reached on September 6. As part of the settlement, West agreed to offer all employees work on September 7 and the Union agreed to waive reporting and standby time provisions of the new contract for pickers until October 15.

During the week of the strike, some of the unharvested mushrooms in the greenhouse rooms matured. Their caps opened, releasing billions of spores into the air. Some spores became diseased and spread to other rooms via the temperature control and ventilating system ducts, infecting growing mushrooms. Over a million pounds of mushrooms in 28 of the 36 rooms were lost to production when the infected rooms were steamed and growth destroyed.

West called all employees back to work on September 7 as agreed, and the mushroom pickers were assigned to clean out the contaminated rooms. The loss of a large portion of the current crop resulted in a lack of available work and full employment for pickers with low seniority was not restored until the end of October.

Twenty-two employees filed unemployment insurance claims for the period following September 7, 1976. The Employment Development Department paid the claims and charged West's reserve fund. West obtained a hearing before an administrative judge on February 23, 1977. The judge found the claims valid and West appealed to the Board. West contended the employees caused their subsequent unemployment voluntarily through strike activity and were thus ineligible under Board precedents for unemployment benefits. A majority of the Board's members disagreed, ruling that the trade dispute was settled on September 6 and West's subsequent inability to resume full production did not indicate that the dispute was still in active progress within the meaning of Unemployment Insurance Code section 1262[1] (hereinafter 1262).

---

[1] Unemployment Insurance Code section 1262 states: "An individual is not eligible for unemployment compensation benefits, and no such benefits shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work *by reason of the fact that the trade dispute is still in active progress* in the establishment in which he was employed." (Italics added.)

On February 22, 1978, West petitioned the superior court for a writ of mandamus (Code Civ. Proc., § 1094.5) to vacate the Board's decision. The court found the Board had abused its discretion by failing to apply governing precedent under 1262. Citing one of the Board's precedent decisions (P-B 89), the court held the rule to be that if because of the foreseeable consequences of employee action taken during a trade dispute an employer is unable to offer work immediately following the nominal settlement date thereof, the employees remain ineligible for unemployment benefits until the effects of the work stoppage are dissipated. Applying that rule to the West situation, the court concluded the employees knew or should have known that the work stoppage would cause destruction of the mushroom crop and isued the writ. The Board then appealed to us.

Since there is no conflict as to the facts and the only issue is the application of 1262, we are not bound by the trial court's determination. (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534 [81 Cal.Rptr. 112].)

■ Whether the termination of a labor dispute will operate to end employee disqualification for unemployment benefits is a matter dependent upon the particular wording of the statutory provision in question. (Annot. (1975) 63 A.L.R.3d 88, 199, § 30[a].) Statutes such as 1262, which disqualify workers while a labor dispute is in active progress, have been held to terminate disqualification for benefits at the conclusion of the dispute; lack of work occasioned by the necessity for a gradual resumption of production in such cases is viewed as merely an incident of a particular industry and outside the purview of the statute. (*Id.,* at pp. 200-201.) On the other hand, statutes generally disqualifying workers unemployed due to or as a result of a labor dispute or work stoppage have been held to require disqualification until normal production is resumed, as the focus of such statutes is causation. (*Id.,* at pp. 201-202.)

The literal wording of the statute in question here does not permit the result reached by the trial court, regardless of how arguably equitable it may be. The Legislature has said that a worker ineligible for unemployment benefits because he left work due to a trade dispute, remains ineligible so long as the continuing *active progress* of the dispute prolongs his idleness. Once the dispute is settled, it is of course no longer in active progress, and eligibility is restored. This conclusion is unavoidable; and if the result does not comport with the conceptual intendments of the Unemployment Insurance Law, the Legislature must act to correct it.

We have no quarrel with the California Unemployment Insurance Appeals Board Precedent Benefit Decision (P-B 89), and accept it as an administratively (and judicially) created exception to 1262. In that case, illegally striking employees of an Owens-Illinois Glass Company manufacturing plant refused to allow furnace maintenance personnel access to the plant to dismantle a furnace despite a valid court order prohibiting interference with plant operations. As a consequence of the delay; the plant was unable to resume full operations until a week after a new collective bargaining agreement was reached. The Board held that those employees who had ignored the restraining order and refused to work during the illegal strike (when work was available) and who had voted to prevent access of maintenance personnel to the plant were disqualified for unemployment benefits for the period between termination of the dispute and resumption of full employment, because the delay was clearly attributable to their own voluntary and contemptuous actions. (See *Ruberoid Co.* v. *California Unemployment Ins. Appeals Board* (1963) 59 Cal.2d 73 [27 Cal.Rptr. 878, 378 P.2d 102], for the rule that voluntary unemployment terminates benefit eligibility.) As above noted, the general rule expressed in 1262 is that disqualification for unemployment benefits terminates upon resolution of active labor disputes. P-B 89 thus establishes an exception to this rule when the illegal and egregious acts of employees prolong the effects of the dispute unnecessarily.

The judgment is reversed and the trial court is directed to enter judgment in favor of the Board, denying West's petition for a writ of mandamus.

Puglia, P. J., and Reynoso, J., concurred.