[Civ. No. 46515. First Dist., Div. One. Nov. 18, 1981.]

ERNEST V. JOINER et al., Plaintiffs and Appellants, v. CITY OF SEBASTOPOL, Defendant and Respondent.

COUNSEL

A. J. Di Mauro for Plaintiffs and Appellants.

Edward Dermott, City Attorney, and Dermott & Cutler for Defendant and Respondent.

Frederick W. Clough, City Attorney (Santa Barbara), as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

GRODIN, J.—The Ralph M. Brown Act (Gov. Code, § 54950 et seq.) requires that "[a]ll meetings of the legislative body of a local agency shall be open and public" (Gov. Code, § 54953). The term "legislative body" is defined in Government Code section 54952.3 to include "any advisory commission, advisory committee or advisory body of a local agency, created by charter, ordinance, resolution, or by any similar formal actions of a governing body or member of such governing body of a local agency . . . [but] as defined in this section does not include a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body." The question presented by this appeal is whether a group consisting of two members of a city council and two members of a city planning commission (in both instances less than a quorum of their respective bodies), created at the initiative of the city council for the purpose of making recommendations to the city council concerning the filling of a vacancy on the planning commission, constitutes a "legislative body" within the meaning of that section.[1] Contrary to the ruling of the trial court, we hold that it does.

### Factual and Procedural Background

The relevant facts are not in dispute. The City of Sebastopol has a city council and a planning commission. The members of the commission are appointed by, and serve at the pleasure of, the council. On February 16, 1976, the mayor announced at a regular city council meeting that a member of the planning commission had resigned, and the council then discussed various procedures for interviewing applicants for the vacant position. The city attorney advised that a group consisting of less than a quorum of the council and less than a quorum of the planning commission could interview applicants and make a joint recommendation to the council concerning the appointment of a commissioner to fill the vacancy. The council agreed to commend that approach to the planning commission, and designated two council members to meet for that purpose in the event that the commission similarly

---

[1] Appellants contend in the alternative that such a group constitutes a "legislative body" within the meaning of Government Code section 54952, which defines the term as including "any board, commission, committee, or other body on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency . . . ." In view of our disposition, it is unnecessary to consider that contention.

designated two of its members. On February 24, 1976, the planning commission discussed the council's proposal at its regular meeting, but took no action. At the next regular meeting of the city council, on March 1, 1976, the city council again discussed the procedure; and the mayor asked the chairman of the planning commission, who was present, "to poll the Commission members and see if two will serve with two council members and participate in private interviews and return with the information to the City Council." The chairman did that at the next regular meeting of the planning commission about a week later, and two commissioners volunteered to serve.

At this point appellants, who are a newspaper publisher and a newspaper correspondent, interceded by filing a complaint for injunctive relief, claiming that the proposed nonpublic meeting of the joint group would violate the Brown Act. In fact, the meeting never took place. The city cross-complained for declaratory relief, however, and the action proceeded.

After a two-day trial, the trial court made "findings" to the effect that, "No 'Advisory Commission or Advisory Committee' ever came into being, nor was it contemplated that such Commission or Committee would be 'created' by the City Council"; that "The City Council's proposal was that a subcommittee of the City Council, consisting of less than a quorum, and a sub-committee of the Planning Commission, consisting of less than a quorum, meet together for purposes of discussion, evaluation and recommendation, but that such group not possess any power or any decision making authority"; and that "Whatever recommendations may have resulted from the meeting of the proposed group would not be binding upon the City Council." It entered judgment declaring: "The use of sub-committees of two public agencies constituting less than a quorum of each public agency or legislative body for the purposes herein contemplated, does not constitute a violation of the Brown Act," and directed that each party bear its own costs and attorney's fees.[2] This appeal followed. A number of cities have filed an amicus curiae brief in support of respondent's position.

*Discussion*

■    The critical question is whether the group contemplated by the city council's action would constitute an "advisory committee . . . cre-

---

[2]The trial court also concluded that the request for injunctive relief was moot. Appellants have not challenged that conclusion on appeal.

ated by ... formal action" of the city council. If so, then it would constitute a "legislative body" within the meaning of Government Code section 54952.3, since its composition was not limited to members of the city council as required by the exception to that section. The question is one of law applicable to undisputed facts, so that this court is not bound by the trial court's negative "finding" on that ultimate issue. (Cf. *Mantonya* v. *Bratlie* (1948) 33 Cal.2d 120, 128 [199 P.2d 677]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 256.)

In support of the trial court's reasoning, respondent and amici rely upon *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875 [144 Cal.Rptr. 568], which held that the open meeting requirement of the Brown Act did not apply to meetings of three "ad hoc advisory committees" created by the board of education to interview candidates for appointment to the board, because each committee was composed solely of members of the governing body, and each comprised less than a quorum of that body, thus meeting the requirements of the exception to section 54952.3. *Henderson,* however, does not address the issue presented here. The group contemplated by the city council's action in this case was not to be limited to members of the governing body, so that if that group constituted an "advisory committee" the exception does not apply.[3]

Respondent and amici rely also upon an unpublished "indexed letter" from Attorney General Younger to State Senator Behr (Cal.Atty.Gen. I.L. 76-174 (Aug. 27, 1976)) in response to the senator's inquiry: "Are the open meeting requirements of the Ralph M. Brown Act applicable to the meetings which have been or are being held between representatives of Lake County and Yolo County to discuss mutual water problems of the two counties?" The meetings were of two subcommittees of the boards of supervisors of the two counties, each consisting of less than a quorum of each board. The Attorney General expressed the opinion as regards Government Code section 54952.3 that "the two sub-

---

[3]Respondent appears to attach significance to the fact that the *Henderson* court quoted with approval from a publication of the Attorney General's office entitled "Secret Meeting Laws Applicable to Public Agencies" (1972), which characterizes the exception to Government Code section 54952.3 as codifying, as regards advisory bodies, the "less than a quorum" exception which the Attorney General has long deemed applicable by implication to the Brown Act as a whole. Since Government Code section 54952.3 expressly provides for a less-than-a-quorum exception, whether such an exception is implicit in other statutory definitions of the term "legislative body" is not relevant for our purposes.

committees would be removed from the definition of a 'legislative body' by the terms of the section itself, which exempts 'a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body.'"[4]

That opinion, however, concerned a meeting between representatives of two legislative bodies, both of which had responsibility for the subject matter under discussion, in order to discuss their "mutual" problems and, presumably, to report back to their respective bodies. To characterize such a meeting as being between two subcommittees, rather than as the meeting of a single "advisory committee," seems entirely appropriate. A different question is presented here, where the proposed meeting was for the purpose of making a recommendation to the city council concerning a matter within its sole responsibility.

This distinction is reflected in a recent formal opinion of the Attorney General (64 Ops.Cal.Atty.Gen. 856 (1981)) concerning proposed meetings of a "Coordinating Committee," consisting of less than a quorum of the governing boards of the El Dorado County Water Agency and the El Dorado Irrigation District, to discuss mutual problems concerning development of the South Fork of the American River for energy and other purposes. The facts as presented to the Attorney General were in dispute: government officials characterized the coordinating committee as "in reality two subcommittees of the respective governing bodies which are sent to meet with each other and do nothing but report back with information to their respective boards to avoid the necessity of the full boards jointly meeting all the time," whereas a local newspaper asserted that the committee "is a single committee which has generally acted like a 'unitary body.'" Declining to resolve the factual dispute, the Attorney General opined that the answer depended upon which characterization was correct: if the committee were "an independent, separate committee which has been established by the two governing boards," then the open meeting requirement of the Brown Act would apply; but "if the 'committee' is in fact two subcommittees of the governing boards of the water agency and the irrigation district," then the requirement would not be applicable.

We are, of course, not bound by opinions of the Attorney General, but in matters of this sort it has been held that they are entitled to

---

[4]The indexed letter also discusses the applicability of the definitions of "legislative body" contained in Government Code sections 54952 and 54952.5, matters not relevant here.

"great weight" (*Henderson* v. *Board of Education, supra*, 78 Cal.App. 3d 875, 883; *Lucas* v. *Board of Trustees* (1971) 18 Cal.App.3d 988, 991-992 [96 Cal.Rptr. 431]), and we find ourselves moreover, in this matter, persuaded by his reasoning. The representatives of the city council and the planning commission were not to "report back with information to their respective boards." Rather, they were as a "unitary body" to interview applicants and report, with recommendations, to the city council, which had sole legal responsibility for filling the vacancy. We conclude that the proposed meeting was to be of an "advisory committee" within the meaning of Government Code section 54952.3.

We conclude also on the basis of undisputed facts that the proposed committee was "created by . . . formal action" of the city council. Respondent concedes that the city council, though it did not formally adopt a resolution, nevertheless took "formal action" when it designated two of its members to meet with two planning commission members. It follows (since that designation was pursuant to a unanimously approved plan) that the city council also took "formal action" when it adopted the proposed agenda for the meeting, i.e., that the group which was to meet would interview applicants and report back to the city council with recommendations. And, since the city council instigated that procedure as a means of fulfilling its responsibility to fill a vacancy on the planning commission, the "creation" of the committee must be attributed to the council's action. The fact that the procedure was contingent upon the planning commission's compliance does not detract from that conclusion. A contrary view would lead to the unacceptable conclusion that a legislative body which desired to evade the strictures of Government Code section 54952.3 could do so simply by declaring that the existence of an advisory committee including nonmembers of the governing body was contingent upon the nonmembers being willing to serve.[5]

Government Code section 54960.5 provides for recovery of attorney's fees and costs by a successful plaintiff. Upon remand, the trial court will determine appellants' entitlement under that section.

---

[5]Government Code section 54952:3 was amended in 1975 to extend the definition of the term "legislative body" to include advisory bodies created by any "member" of the governing body. (Stats. 1975, ch. 959, § 7.) This amendment, as well as the broad language used in the section to encompass the various modes by which such a body may be "created," evidences a legislative intent that the section be construed broadly to preclude evasion.

Reversed and remanded. Appellants will recover their costs on appeal.

Elkington, Acting P. J., and Ragan, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.