[Civ. No. 26018. Fourth Dist., Div. One. Sept. 7, 1983.]

SAN DIEGO UNION, Plaintiff and Respondent, v.
CITY COUNCIL OF THE CITY OF SAN DIEGO,
Defendant and Appellant.

948

**COUNSEL**

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, Alejandro Matuk and Kenneth So, Deputy City Attorneys, for Defendant and Appellant.

Gray, Cary, Ames & Frye, Edward J. McIntyre and John Allcock for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—The City Council of the City of San Diego (City Council) appeals a judgment mandating the City Council to hold public sessions when discussing or determining salaries of city nonelected officers or employees

as enumerated in Government Code section 54957[1]; declaring section 54953 prohibits City Council from meeting in executive session to discuss and/or determine the salaries of those officers or employees and that section 54957 does not exempt such executive sessions from the mandate of section 54953; and permanently enjoining and restraining City Council from meeting in executive session to discuss and/or determine such salaries. The primary issue presented by this appeal is whether the Ralph M. Brown Act (Brown Act), specifically section 54957, requires public sessions when salaries of nonelected city officers or employees are discussed and determined. We conclude the Brown Act prohibits exclusion of the public during City Council sessions at which such salaries are discussed and/or determined, except when a specific nonelected officer's or employee's job performance is evaluated the City Council should meet in executive session for that purpose only and, upon determining the individual warrants a salary adjustment, hold a properly noticed, public meeting to determine that adjustment. As so interpreted, we affirm the judgment.

## Factual and Procedural Background

When the City Council met in executive session for the announced purpose of discussing and determining the salaries of City Manager Ray Blair, Planning Director Jack Van Cleave, City Auditor William Sage and City Clerk Charles Abdelnour, for the 1980-1981 fiscal year, members of the public, including a San Diego Union reporter, were excluded. During the executive session, the job performance of each employee was discussed and, after such evaluation, the City Council increased the salary of each. At a later, regular meeting the City Council announced and adopted the respective salary levels for the cited employees which had been agreed upon in closed session.

The Union obtained an order enjoining the City Council from discussing and determining salaries of nonelected city employees in closed session.[2]

Throughout this controversy, section 54953 has provided: "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." At the time of the judgment, section 54957 provided in pertinent part: "Nothing contained in this chapter shall be construed to prevent the legislative body of a

---

[1] All statutory references are to the Government Code.

[2] The parties have stipulated the Union is a newspaper of general circulation in San Diego County and constitutes an "interested person" within the meaning of section 54960. Further, the parties agree the City Council is a legislative body of a local agency as that term is defined in sections 54951 and 54952.

local agency from holding closed sessions with the Attorney General, district attorney, sheriff, or chief of police, or their respective deputies, on matters posing a threat to the security of public buildings or a threat to the public's right of access to public services or public facilities, *or from holding closed sessions during a regular or special meeting to consider the appointment, employment, or dismissal of a public employee or to hear complaints or charges brought against such employee by another person or employee unless such employee requests a public hearing.* The legislative body also may exclude from any such public or closed meeting, during examination of a witness, any or all other witnesses in the matter being investigated by the legislative body.

"For the purposes of this section, the term 'employee' shall not include any person elected to office, or appointed to an office by the legislative body of a local agency; provided, however, that nonelective positions of city manager, county administrator, city attorney, county counsel, or a department head or other similar administrative officer of a local agency shall be considered employee positions; and provided further that nonelective positions of general manager, chief engineer, legal counsel, district secretary, auditor, assessor, treasurer, or tax collector of any governmental district supplying services within limited boundaries shall be deemed employee positions." (Italics added.) After judgment in 1982, section 54957 was amended by inserting "evaluation of performance" after "the appointment, employment" language in the first paragraph.

### Applicable Rules Governing Our Appellate Review

■ The granting, denying, dissolving, or refusal to dissolve a permanent injunction rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear abuse of discretion. (*Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 606 [342 P.2d 249]; *Gawzner Corp.* v. *Minier* (1975) 46 Cal.App.3d 777, 781 [120 Cal.Rptr. 344, 80 A.L.R.3d 726].) However, because continuing relief by injunction operates in the future, "[i]t is the established rule that 'on appeals involving injunction decrees, the law in effect when the appellate court renders its opinion must be applied.'" (*McKinny* v. *Board of Trustees* (1982) 31 Cal.3d 79, 85, fn. 1 [181 Cal.Rptr. 549, 642 P.2d 460], quoting *Tulare Dist.* v. *Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 527-528 [45 P.2d 972]; *M Restaurants, Inc.* v. *San Francisco Local Joint Exec. Bd. Culinary, etc. Union* (1981) 124 Cal.App.3d 666, 673-674 [177 Cal.Rptr. 690].) ■ Moreover, when reviewing the interpretation and proper application of a statute where, as here, the underlying facts are not in dispute, the reviewing court must exercise its independent judgment in making that determination. (*Lewis* v. *City of Los Angeles* (1982) 137 Cal.App.3d 518,

522 [187 Cal.Rptr. 273]; *West Foods, Inc.* v. *Unemployment Ins. Appeals Bd.* (1979) 96 Cal.App.3d 653, 656 [158 Cal.Rptr. 406]; *Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

 THE BROWN ACT PROHIBITS HOLDING EXECUTIVE CITY COUNCIL SESSIONS FOR THE EXPRESS PURPOSE OF DISCUSSING AND DETERMINING SALARIES OF NONELECTED CITY OFFICERS OR EMPLOYEES ENUMERATED IN SECTION 54957; HOWEVER, WHERE A SPECIFIC EMPLOYEE'S PERFORMANCE IS TO BE EVALUATED, AN EXECUTIVE SESSION SHOULD BE HELD FOR THAT LIMITED PURPOSE UNLESS THE EMPLOYEE REQUESTS A PUBLIC SESSION

The essence of this controversy is whether the "personnel exception" set forth in section 54957 to the Brown Act mandating that all meetings of local legislative bodies be open and public, includes sessions devoted to salary level determination.[3] Relying on selective portions of several opinions of the Attorney General, the City Council contends the term "employment" appearing in the exception should be construed broadly to encompass the terms and conditions of continued employment of which salary level determination is an integral part. Further, it asserts the Legislature by the 1982 amendment manifested its intent that evaluation of employee performance fall within the ambit of the "personnel exception," which likewise includes the terms and conditions of employment of which salary level is an integral part. Moreover, it urges the Legislature enacted section 54957 to protect affected employees from undue public embarrassment during the discussion of personnel matters, including their respective salary levels. Contrarily, the Union argues exceptions to the Brown Act must be narrowly construed with all doubts resolved in favor of open and public meetings; cites the ease with which the City Council can evaluate in executive session the job performances of senior city employees and determine whether the specific official warrants a salary increase and then to meet in public to determine salary adjustment; and claims public policy and the underlying legislative intent of the Brown Act mandate that salaries of city executives be publicly discussed and set.

 Our interpretation of the "personnel exception" of section 54957 is governed by the following fundamental rules of statutory construction: Of

---

[3]The "personnel exception" within section 54957 provides in pertinent part: "Nothing contained in this chapter shall be construed to prevent the legislative body of a local agency from holding closed sessions . . . during a regular or special meeting to consider the appointment, employment, evaluation of performance, or dismissal of a public employee or to hear complaints or charges brought against such employee by another person or employee unless such employee requests a public hearing."

primary importance, "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Moyer* v. *Workmen's Comp. Appeals Board* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The provision under scrutiny must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the law-makers, practical rather than technical in nature, which, upon application, will result in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263]; *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) " 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]; *United Business Com.* v. *City of San Diego, supra,* at p. 170.) ■ As to the latter, opinions of the Attorney General are not binding on the courts, although they have been accorded "great weight" in matters of this nature, where controlling authority construing the provision is absent. (*Joiner* v. *City of Sebastopol* (1981) 125 Cal.App.3d 799, 804-805 [178 Cal.Rptr. 299]; *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 883 [144 Cal.Rptr. 568]; *Worthington* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 388-389 [134 Cal.Rptr. 507].) ■ Finally, express exceptions to the general statutory rule are to be strictly and narrowly construed and will not be extended beyond the import of their terms. (58 Cal.Jur.3d, Statutes, § 116, p. 505.)

The express legislative intent underlying the enactment of the open-meeting requirements of the Brown Act (§ 54953) is set forth in section 54950: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." The Brown Act provides for a "personnel exception" in section 54957 al-

lowing closed sessions when the governmental entity is "meeting to consider the appointment, employment, evaluation of performance or dismissal of a public employee or to hear complaints or charges brought against such employee by another person or employee unless such employee requests a public hearing." The parties agree the underlying purposes of the "personnel exception" are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body. (63 Ops.Cal.Atty.Gen. 153, 155 (1980); 61 Ops.Cal. Atty.Gen. 283, 291 (1978); 59 Ops.Cal.Atty.Gen. 532, 534 (1976).)

■■■ Mindful we must construe the "personnel exception" narrowly and the "sunshine law" liberally in favor of openness (see, e.g., *Wexford Cty. Pros. Atty. v. Pranger* (1978) 83 Mich.App. 197 [268 N.W.2d 344, 346-347]), we reject the City Council's arguments the term "employment" be broadly interpreted so as to encompass the terms and conditions of continued employment of which salary level determination is an integral part or that the amendment providing for "evaluation of performance" be similarly interpreted. Our determination is consistent with the purpose and mandate of the Brown Act and the specific language of section 54957. Salaries and other terms of compensation constitute municipal budgetary matters of substantial public interest warranting open discussion and eventual electoral public ratification. Public visibility breeds public awareness which in turn fosters public activism politically and subtly encouraging the governmental entity to permit public participation in the discussion process. It is difficult to imagine a more critical time for public scrutiny of its governmental decision-making process than when the latter is determining how it shall spend public funds. With ever-increasing demands on public funds which have dwindled so drastically since the passage of Proposition 13, secrecy cannot be condoned in budgetary determinations, including the establishment of salaries. Granted, evaluating a specific employee's performance is a matter within the ambit of the "personnel exception" in light of the 1982 amendment to section 54957; however, upon the determination a particular public employee is deserving of a salary increase, various other factors must be considered such as available funds, other city funding priorities, relative compensation of similar positions within the city and in other jurisdictions, before determining the salary increase. Each of these considerations is of acute public interest.

Further, there is no basis for the apparent underlying assumption of the City Council's argument that it cannot evaluate the performance of the cited public employees without also establishing their salaries in executive session. Consistent with both the "personnel exception" as to the evaluation of performance of a particular employee and the general mandate of the Brown Act, we envision the two-step process of an executive session eval-

uating the performance of the public employee and a properly noticed, open session for setting that particular employee's salary as a facile matter, not negatively affecting the review process. Common sense compels the conclusion that oblique references to discussions of salaries for specific individuals within executive sessions evaluating the performance of that public employee would not violate the Brown Act so long as the specific discussions as to the amount of salary increase are reserved for a properly noticed, public meeting. (See 61 Ops.Cal.Atty.Gen. 283, 288 (1978).)[4]

However, if for any reason the foregoing two-step process proves unworkable, the process could be avoided by adopting a multilevel salary structure designed to compensate the designated officers and employees according to their responsibilities, years of service and job performance, by the City Council after a properly noticed, public session and, if mandated by the charter, ratified by the electorate. (Compare current San Diego City Charter §§ 27, 40, 70 and 71.) Salary increases could proceed automatically upon City Council determining a specific public employee's job performance and other credentials warrant a salary adjustment within an executive session.

Had the Legislature intended the "personnel exception" to permit closed hearings for the determination of the cited public employees' salaries, it could have easily included such authorization when it enacted section 54957.6 in 1968 (15 years after the enactment of the Brown Act), which permits the governmental body to meet in executive session with its representative in collective bargaining negotiations to design negotiating strategy,[5] or when it amended section 54957 in 1982. ■ "It is assumed that the Legislature has in mind existing laws when it passes a statute. [Citations.] 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137].) Consequently, the

---

[4] We note here the affidavits of former Mayor Pete Wilson and Councilman Bill Cleator state the respective job performances of the cited public employees were evaluated. Logically, such evaluations should be held in executive session. However, the apparent announced purpose of the executive session was merely the "discussing and determining [of] the salaries for the 1980-1981 fiscal year of . . . [the cited employees]." Such notice was inadequate to warrant an executive session.

[5] Section 54957.6 provides in pertinent part: "[a] legislative body of a local agency may hold closed sessions with its designated representatives prior to and during consultations and discussions with representatives of employee organizations regarding the salaries, salary schedules, or compensation paid in the form of fringe benefits of employees in order to review its position and instruct its designated representatives . . . ."

omission of any reference to salary or other terms of compensation in section 54957 and the express reference to a specific kind of salary discussion within section 54957.6 evidence a legislative intent not to include such salary discussions within the ambit of the "personnel exception," requiring such a hearing dedicated to salary determination to be open and public unless such discussions fall within the narrow provisions of section 54957.6.[6]

## THE BROWN ACT ADDRESSES A MATTER OF STATEWIDE CONCERN AND THUS IS NOT UNCONSTITUTIONAL AS APPLIED TO THE CITY COUNCIL

Finally, the Brown Act, as applied to City Council, does not unconstitutionally interfere with its plenary authority over municipal affairs.

■ "It has long been settled that, insofar as a charter city [like San Diego] legislates with regard to municipal affairs, its charter prevails over general state law. [Citations.] However, as to matters of statewide concern, charter cities remain subject to state law. [Citation.]" (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 315-316 [152 Cal.Rptr. 903, 591 P.2d 1].)[7] ■ The determination of what constitutes a strict municipal affair is often a difficult question, ultimately for the courts to decide. (*Id.*, at p. 316.) Where the underlying legislative purpose in enacting a general law reveals an attempt to preempt the

---

[6]At oral argument, the City Council argued for the first time the Legislature clearly intended the "personnel exception" to include hearings dedicated to salary determination, because otherwise the Legislature would not have specifically enacted section 25307 requiring all meetings conducted by the County Board of Supervisors pertaining to salaries of county employees be open and public except as provided in section 54957.6. This inference would result in the absurd and discriminatory consequence of permitting open and public hearings pertaining to salary determination only before county boards of supervisors and not before the remaining myriad public governmental entities which must make similar determinations.

[7]A charter city's plenary authority over municipal affairs is constitutionally provided for in article XI, section 5 of the California Constitution. It reads: "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.

"(b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees."

field to the exclusion of local regulation, the fact the Legislature has chosen to deal with the problem on a statewide basis is entitled to great weight; however, it is not determinative of whether the statute in fact relates to a matter of statewide concern. (*Ibid*; *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 63; *District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 273 [144 Cal.Rptr. 442].) Doubt whether a matter "relates only to a municipal affair or to a broader concern must be resolved in favor of the legislative authority of the state." (*City of Los Angeles* v. *Department of Health* (1976) 63 Cal.App.3d 473, 480 [133 Cal.Rptr. 771].)

■ Granted, a charter city has complete control over its municipal affairs and has direct constitutional power to determine the compensation of its officers and employees. (Cal. Const., art. XI, § 5, subds. (a), (b).) However, the Brown Act does not impermissibly infringe in any manner upon this authority. Rather, the procedural nature of the Brown Act's guarantee all meetings of a governmental body be open to the public unless expressly exempted by statute, designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is predicated (see generally, *Attorney Gen.* v. *School Committee of Taunton* (1979) 7 Mass.App. 226 [386 N.E.2d 1295, 1297]), addresses a genuine and pure matter of statewide concern. As section 54950 declares, "[t]he people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." The fundamental nature of this openness requirement does not impede the city's exercise of its plenary authority over the establishment of compensation for its executive appointees. The Brown Act does not conflict with any substantive power constitutionally conferred upon charter cities.

*Disposition:*

The judgment is affirmed.

Brown (Gerald), P. J., and Butler, J., concurred.