BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE DELAINE EASTIN, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, has requested an opinion on the following question:
May a school district deny a parental request for an individual waiver from the statutory mandate that all students be instructed in English on the sole ground that the district has no alternative program?
 CONCLUSION
A school district may not deny a parental request for an individual waiver from the statutory mandate that all students be instructed in English on the sole ground that the district has no alternative program.
 ANALYSIS
At the primary election of June 1998, the voters adopted Proposition 227, the "English Language in Public Schools" initiative statute (Ed. Code, §§ 300-340; "Act").[1] The Act requires children in California's public schools who are of limited English proficiency to be taught only in English, subject to the right of the parents of each affected child to seek a waiver from the requirement of English-only instruction. (McLaughlin v. State Bd. of Education (1999)75 Cal.App.4th 196, 201.) We are asked whether a school district may deny a parental request for a waiver from the English-only requirement on the sole ground that it has no alternative program.[2] We conclude that it may not.
Section 35160 provides:
 "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."
Accordingly, while the powers of a school district are broad, they may not be exercised in a manner that is in conflict, inconsistent, or preempted by state law. (Cumero v. Public Employment Relations Board (1989) 49 Cal.3d 575, 591; 81 Ops.Cal.Atty.Gen. 218, 220-221 (1998).) Would the failure of a school district to make available upon request an alternative program to its English-only classes be in conflict or inconsistent with the Act?
Section 305 sets forth the basic requirements for English-only instruction:
 "Subject to the exceptions provided in Article 3 (commencing with Section 310), all children in California public schools shall be taught English by being taught in English. In particular, this shall require that all children be placed in English language classrooms. Children who are English learners shall be educated through sheltered English immersion during a temporary transition period not normally intended to exceed one year. Local schools shall be permitted to place in the same classroom English learners of different ages but whose degree of English proficiency is similar. Local schools shall be encouraged to mix together in the same classroom English learners from different native-language groups but with the same degree of English fluency. Once English learners have acquired a good working knowledge of English, they shall be transferred to English language mainstream classrooms. . . ."
With respect to parental waivers from the English-only requirement, section 310 provides:
 "The requirements of Section 305 may be waived with the prior written informed consent, to be provided annually, of the child's parents or legal guardian under the circumstances specified below and in Section 311. Such informed consent shall require that said parents or legal guardian personally visit the school to apply for the waiver and that they there be provided a full description of the educational materials to be used in the different educational program choices and all the educational opportunities available to the child. Under such parental waiver conditions, children may be transferred to classes where they are taught English and other subjects through bilingual education techniques or other generally recognized educational methodologies permitted by law. Individual schools in which 20 pupils or more of a given grade level receive a waiver shall be required to offer such a class; otherwise, they must allow the pupils to transfer to a public school in which such a class is offered."
Parental waivers may be granted under the terms of section 311, which state:
 "The circumstances in which a parental exception waiver may be granted under Section 310 are as follows:
 "(a) Children who already know English: the child already possesses good English language skills, as measured by standardized tests of English vocabulary comprehension, reading, and writing, in which the child scores at or above the state average for his or her grade level or at or above the 5th grade average, whichever is lower; or
 "(b) Older children: the child is age 10 years or older, and it is the informed belief of the school principal and educational staff that an alternate course of educational study would be better suited to the child's rapid acquisition of basic English language skills; or
 "(c) Children with special needs: the child already has been placed for a period of not less than thirty days during that school year in an English language classroom and it is subsequently the informed belief of the school principal and educational staff that the child has such special physical, emotional, psychological, or educational needs that an alternate course of educational study would be better suited to the child's overall educational development. A written description of these special needs must be provided and any such decision is to be made subject to the examination and approval of the local school superintendent, under guidelines established by and subject to the review of the local Board of Education and ultimately the State Board of Education. The existence of such special needs shall not compel issuance of a waiver, and the parents shall be fully informed of their right to refuse to agree to a waiver."
Examining first the provisions of section 310, we find that the transfer of children of limited English proficiency to classes where they are taught "through bilingual education techniques or other generally recognized educational methodologies permitted by law" requires "that said parents . . . be provided a full description of the educational materials to be used in the different educational program choices. . . ." We do not believe that a "full description of the educational materials to be used" may consist of a blank page or that "the different educational program choices" may consist exclusively of courses taught only in English. A contrary view would be in conflict with the primary interpretive precept that a statute must be given a reasonable and common sense construction consistent with the apparent purpose and intention of those who ordained it. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632; California Correctional Peace Officers Assn. v. State Personnel Bd. (1995)10 Cal.4th 1133, 1147; DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593,601; San Diego Union v. City Council (1983) 146 Cal.App.3d 947, 954; 78 Ops.Cal.Atty.Gen. 192, 194 (1995).)
Section 310 further provides: "Individual schools in which 20 pupils or more of a given grade level receive a waiver shall be required to offer such a class; otherwise, they must allow the pupils to transfer to a public school in which such a class is offered." This provision may not be construed to mean that if 20 pupils or more of a given grade level receive a waiver, a school must either provide such a class or allow the pupils to transfer to another school that provides such a class. Such an interpretation could ignore the needs of as many as 19 pupils per grade level at a school. Rather, under a more reasonable interpretation consistent with the words and structure of the provision itself, if 20 or more pupils of a given grade level receive a waiver, a school must provide such a class; but if less than 20 of a given grade level receive a waiver, the school may either provide such a class or allow the pupils to transfer to another school that provides such a class.
With respect to the provisions of section 311, the designated criteria clearly suggest that each application for a waiver must be considered on its individual merits. The specified criteria are entirely inconsistent with the view that the Act gives a school district absolute authority to summarily deny all applications due to a lack of alternative programs.
The ballot materials submitted to the electorate fully support our interpretation of sections 310 and 311.[3] The proponents of the initiative expressly stated with respect to the Act: "Doesn't eliminate choice or impose a single approach. . . . We give choice to parents, not administrators."
Finally, pursuant to its grant of authority under section 33031, the State Board of Education has promulgated regulations (Cal. Code Regs., tit. 5, §§ 5:11300-5:11305) implementing the Act, including the following:
 "Parental exception waivers shall be granted unless the school principal and educational staff have determined that an alternative program offered at the school would not be better suited for the overall educational development of the pupil." (Cal. Code Regs., tit. 5, § 5:11303, subd. (a)(3).)
It is well settled that the administrative construction of a statute by those charged with its enforcement is entitled to great weight, and the courts will not depart from such construction unless it is clearly erroneous or unauthorized. (Dix v. Superior Court (1991) 53 Cal.3d 442,460; Nipper v. California Auto. Assigned Risk Plan (1977) 19 Cal.3d 35,45; 78 Ops.Cal.Atty.Gen. 121, 127 (1995).)
We conclude that a school district may not deny a parental request for an individual waiver from the statutory mandate that all students be instructed in English on the sole ground that the district has no alternative program.
[1] All references hereafter to the Education Code are by section number only.
[2] The scope of this opinion is limited to an interpretation of the terms and provisions of the Act.
[3] The intent of an initiative statute may be discerned by reference to the ballot materials presented to the electorate. (See Los Angeles County Transportation Com. v. Richmond (1982) 31 Cal.3d 197, 203; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978)22 Cal.3d 208, 245-246; 65 Ops.Cal.Atty.Gen. 512, 514 (1982).)