KAMALA D. HARRIS Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE CAROL LIU, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. Under the provisions of the Ralph M. Brown Act, which generally require local governmental bodies to conduct open and public meetings, may a majority of the members of a city council meet outside the city's boundaries to attend a non-public tour of the facilities of a water district that provides services to the city for the purpose of acquiring information regarding those services?
2. If not, may a majority of the members of a city council attend the extraterritorial facilities tour if it were instead held as a noticed, public meeting of the council? *Page 2 
 CONCLUSIONS
1. Under the provisions of the Ralph M. Brown Act, a majority of the members of a city council may not meet, either outside or inside the city's boundaries, to attend a private tour of the facilities of a water district that provides services to the city for the purpose of acquiring information regarding those services.
2. A majority of the members of a city council may attend a tour of the extraterritorial water-district facilities if the tour is held as a noticed and public meeting of the council for the purpose of inspecting the facilities and the topics raised and discussed at the meeting are limited to items directly related to the facilities being inspected.
 ANALYSIS
We are told that various officers and employees of a California city have been invited on a trip to tour water facilities located outside the city's boundaries and owned by the metropolitan water district of which the city and numerous other local agencies are constituent members. While these constituent member agencies are all located in Southern California, the facilities to be toured are located in Northern California, near the Sacramento Delta. The tour would not be open to the public at large, but only to invited guests. Given these circumstances, local officials are concerned whether a majority of the members of the city council would be able to jointly tour the district facilities without violating the terms of the Ralph M. Brown Act, [1] which generally provide that the legislative bodies of local governmental agencies must hold their meetings in open and public sessions. In the event they may not, we have also been asked in the alternative whether such a tour could be held in compliance with the Brown Act if the council provided public notice of its intent to meet outside the city's boundaries and the tour were held open to the public.
For the reasons that follow, we conclude that a majority of city council members may not attend a private tour of the water district's facilities for the purpose of acquiring information relevant to the services that the water district provides or may provide to the city, because the members' attendance at the tour would constitute an unlawful closed meeting within the meaning of the Brown Act. We also conclude that a majority of the city council could lawfully attend a tour of the extraterritorial facilities if the tour were properly noticed and held open to the public, provided further that the tour were conducted for the purpose of touring the facilities and that the topics raised and discussed *Page 3 
at the meeting/tour were limited to those items directly related to the facilities being inspected.
The Brown Act is a public access law. It was adopted "to ensure the public's right to attend the meetings of public agencies,"[2]
as well as "to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation."[3] The Legislature has made its intentions in this regard explicit:
 [T]he Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.
 The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.[4]
Thus, the Brown Act carries out the command set forth in the California Constitution that "[t]he people have the right of access to information concerning the conduct of the people's business, and therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny."[5]
Because it is a remedial statute, the Brown Act "should be construed liberally in favor of openness so as to accomplish its purpose and suppress the mischief at which it is directed."[6] This is consistent with both the general rule that civil statutes designed to protect the public are to be "broadly *Page 4 
construed in favor of that protective purpose"[7] and our constitution's directive that a public-access statute, such as the Brown Act, "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access."[8]
 1. Is the proposed facilities tour a "meeting" for Brown Actpurposes?
Under the Brown Act, meetings of a local legislative body[9]
must be noticed and — unless a statutory exception applies that would authorize a closed session[10] — held open to the public.[11] A "meeting" is defined as:
 any congregation of a majority of the members of a legislative body at the same time and location, including teleconference location . . ., to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body.[12]
The issue here is whether a tour of a water district's facilities would constitute a "meeting" of the city council for purposes of the Brown Act. If so, then failure to hold the event open to the public would violate the Act's open meeting requirement.[13]
It is well settled that the Brown Act's definition of "meeting" encompasses informal deliberative and fact-finding sessions, in addition to those in which formal *Page 5 
action is taken.[14] The Act's intent is that "deliberation as well as action occur openly and publicly. Recognition of deliberation and action as dual components of the collective decision-making process brings awareness that the meeting concept cannot be split off and confined to one component only, but rather comprehends both and either."[15] Thus, a "meeting" is not limited to those legislative sessions in which a legislative body decides upon a particular course of action, but also includes sessions conducted for the "collective acquisition and exchange of facts preliminary to the ultimate decision."[16] For example, a session between a school board and a consortium of three real estate brokers in which the board garnered information about the brokers' qualifications to perform future services constituted a "meeting" for Brown Act purposes, even though the board did not commit to retain any of the brokers.[17]
Nor is the lack of a conventional meeting format determinative. "As operative criteria, formality and informality are alien to the law's design, exposing it to the very evasions it was designed to prevent. Construed in the light of the Brown Act's objectives, the term `meeting' extends to informal sessions or conferences . . . designed for the discussion of public business."[18] Thus, where a quorum of a school board viewed a "censorship film" that pertained to a pending curriculum controversy, and did not conduct any follow-up discussion about the film or the controversy, the viewing of the film "was itself an act of collective acquisition of information" relating to the controversy" and therefore constituted a meeting subject to the provisions of the Act.[19]
In this case, the question is whether a majority of members of a city council may attend a private tour of water facilities owned and operated by the water district that provides water services to the city. We presume — and we have received no indications to the contrary — that the tour would include the acquisition of information relevant to the water services that the district provides, or may provide, to the city. In our view, the gathering of such information amounts to public business within the council's *Page 6 
jurisdiction. Accordingly, as it has been described to us, the tour would be a "meeting" if a majority of the council were to participate, and thus it would be a violation of the Brown Act to conduct it privately.[20] And finally, because this part of our analysis does not have a geographical aspect (as opposed to our analysis of the second question, infra), our conclusion would be the same whether the tour were conducted outside or inside the city's boundaries.
Therefore we conclude that a majority of the members of a city council may not lawfully meet, either outside or inside the city's boundaries, to attend a private tour of the facilities of a water district that provides services to the city for the purpose of acquiring information regarding those services.[21]
 2. May a facilities tour be conducted as an open and noticedmeeting?
We next consider whether a majority of city council members could lawfully attend an informational tour outside of the city's boundaries if the tour were held open to the public, and the city council provided public notice of its intent to meet in this manner. As discussed below, we believe an extraterritorial tour could lawfully proceed as an open and noticed meeting of the city council, as long as applicable statutory requirements are satisfied.
Generally speaking, "regular and special meetings of the legislative body shall be held within the boundaries of the territory over which the local agency exercises jurisdiction. . . ."[22] There are, however, exceptions to this general requirement.[23] Of those, the only one with potential application to this situation[24] is the one that permits a *Page 7 
local legislative body to meet outside its jurisdiction in order to:
 [i]nspect real or personal property which cannot be conveniently brought within the boundaries of the territory over which the local agency exercises jurisdiction provided that the topic of the meeting is limited to items directly related to the real or personal property.[25]
We believe that this statute, which permits a local agency to hold certain meetings outside its territorial boundaries, may be fairly characterized as one that "limits the [people's] right of access"[26] to information concerning public business. This is so, we think, because an extraterritorial meeting — even if conducted for a valid reason and even if noticed and held open to the public — can generally be expected to be more difficult for citizens to attend than a regular meeting of the local agency. Both because of its access-limiting potential, and because it is an exception to a general statutory command, we are required to construe the statute narrowly.[27]
Still, we must give meaning to the words actually used in the exception, and "give them their usual, ordinary meaning, which in turn may be obtained by referring to a dictionary."[28] "Inspect" is ordinarily defined as a verb meaning to "`view closely and critically' (as in order to ascertain quality or state, detect errors, or otherwise appraise)" *Page 8 
or to "`view and examine formally or officially' (as troops or arms)."[29] We believe it is reasonable to assume that a tour of public facilities by a group of interested public officials amounts to an inspection of the facilities, as that term is commonly understood. And, undoubtedly, the water facilities "cannot be conveniently brought"[30] from their Northern California location either to the city or to any of the other Southern California local agency members of the water district.
In addition, the exception requires "that the topic of the meeting is limited to items directly related to the real or personal property" being inspected. In other words, the council members would not be permitted to discuss, deliberate, or take action on items not directly related to the facilities being inspected. This requirement effectively precludes a local legislative body (or anyone else construing the statute) from taking an expansive view of what an authorized "inspection" might encompass. Ultimately, for a city council to bring its meeting within the exception for an extraterritorial inspection of property, a facilities tour would need to be conducted as a noticed and public meeting pertaining only to the facilities being inspected.
Therefore, we conclude that a majority of the members of a city council may attend a tour of the extraterritorial water-district facilities if the tour is held as a noticed and public meeting of the council for the purpose of inspecting the facilities and the topics raised and discussed at the meeting are limited to items directly related to the facilities being inspected.
[1] Govt. Code §§ 54950-54963 (hereafter Brown Act or Act).
[2] Freedom Newsp. Inc. v. Orange Co. Employees Ret. Sys.,6 Cal. 4th 821, 825 (1993).
[3] Cohan v. City of Thousand Oaks,30 Cal. App. 4th 547, 555 (1994).
[4] Govt. Code § 54950.
[5] Cal. Const. art. I § 3(b)(1); see Cal. Const. art. I § 26 ("The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.").
[6] Intl. Longshoremen's and Warehousemen's Union v. Los AngelesExport Terminal, Inc., 69 Cal. App. 4th 287, 294 (1999); seeSan Diego Union v. City Council,146 Cal. App. 3d 947, 955 (1983).
[7] People ex rel. Lungren v. Super. Ct.,14 Cal. 4th 294, 313 (1996).
[8] Cal. Const. art. I, § 3(b)(2).
[9] A city council is a "local legislative body." See Govt. Code §§ 54951 ("local agency" includes general and charter cities), 54952(a) ("legislative body" includes "governing body of a local agency"); Joiner v. City of Sebastopol,125 Cal. App. 3d 799, 801-802 (1981).
[10] The Act contains exceptions that authorize local bodies to adjourn otherwise open and public meetings into closed session in order to consider specific subjects, such as pending or anticipated litigation (Govt. Code § 54956.9), public employee evaluation and discipline (Govt. Code § 54957), and negotiation of price and terms of payment for real estate transactions (Govt. Code § 54956.8).See Hamilton v. Town of Los Gatos,213 Cal. App. 3d 1050, 1055 (1989). The closed-meeting provisions are not at issue here.
[11] Govt. Code §§ 54953(a), 54954(a).
[12] Govt. Code § 54952.2(a).
[13] Govt. Code § 54953(a).
[14] Roberts v. City of Palmdale,5 Cal. 4th 363, 375-376 (1993).
[15] Sacramento Newsp. Guild v. Sacramento Co. Bd.of Supervisors, 263 Cal. App. 2d 41, 47 (1968).
[16] Id. at 47-48; see 216 Sutter Bay Assocs. v. Co.of Sutter, 58 Cal. App. 4th 860, 876, 877 (1997).
[17] Rowen v. Santa Clara Unified Sch. Dist.,121 Cal. App. 3d 231, 233-234 (1981).
[18] Sacramento Newsp. Guild, 263 Cal. App. 2d at 50-51;see also 42 Ops.Cal.Atty.Gen. 61, 67 (1963) ("informal," "study," "discussion," "informational," or "precouncil" gatherings of quorum are meetings within Brown Act).
[19] Frazer v. Dixon Unified Sch. Dist.,18 Cal. App. 4th 781, 796 (1993).
[20] The district attorney or any other interested person may seek injunctive, mandamus, or declarative relief in the superior court for the purpose of stopping or preventing actual or threatened Brown Act violations. Govt. Code § 54960(a).
[21] While the Brown Act lists five types of gatherings that "a majority of the members of a legislative body" may attend without convening a "meeting" for purposes of the Brown Act (see Govt. Code § 54952.2(c)(2)-(6)), none of them apply to the current situation. Four of the exceptions — subdivisions (c)(2), (c)(3), (c)(4), and (c)(6) — require that the event in question be held open to the public nevertheless. A fifth — subdivision (c)(5) — is reserved for "purely social or ceremonial occasion[s]."
[22] Govt. Code § 54954(b).
[23] Govt. Code § 54954(b)(1)-(7).
[24] An exception exists for "meetings or discussions of multiagency significance that are outside the boundaries of a local agency's jurisdiction," provided that such a meeting physically takes place "within the jurisdiction of one of the participating local agencies and be noticed by all participating agencies."See Govt. Code § 54954(b)(3). But this exception applies to multi-agency meetings, whereas here we have only been asked whether the city council may notice the extraterritorial facilities tour as one of its own meetings. Also, because the water district — rather than the city — owns the facilities to be toured, we find inapplicable the extraterritorial exception that permits a local legislative body to meet outside its jurisdiction "if the meeting takes place in a facility owned by the agency, [and other conditions are met]." See Govt. Code § 54954(b)(6) (emphasis added).
[25] Govt. Code § 54954(b)(2).
[26] Cal. Const. art. I § 3(b)(2).
[27] Id.; see Shapiro v. San Diego City Council,96 Cal. App. 4th 904, 917 (2002); San Diego Union v. CityCouncil, 146 Cal. App. 3d 947, 954-955 (1983); see alsoRudd v. Cal. Cas. Gen. Ins. Co.,219 Cal. App. 3d 948, 952 (1990) (statutory language "must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute, and where possible the language should be read so as to conform to the spirit of the enactment").
[28] Smith v. Selma Community Hosp.,188 Cal. App. 4th 1, 30 (2010).
[29] See Webster's New International Unabridged Dictionary
1170 (3d ed., Merriam-Webster 2002).
[30] See Govt. Code § 54954(b)(2). *Page 1