[Civ. No. 26701. Fourth Dist., Div. One. Sept. 28, 1983.]

COMMON CAUSE et al., Plaintiffs and Appellants, v.
LARRY STIRLING et al., Defendants and Respondents.

COUNSEL

Sullivan & Jones, Robert L. Simmons, Patrick J. Sullivan, Benjamin & Sutton and William M. Benjamin for Plaintiffs and Appellants.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and Celeste Stahl Brady, Deputy City Attorney, for Defendants and Respondents.

OPINION

JOSEPH, J.*—Applying criteria previously set forth by this court,[1] the trial court denied Common Cause attorney fees. Presently before this court is the question of whether attorney fees generally provided by statute were properly denied on the basis of the factual setting of this action.

The trial court (as will be set forth more fully *infra*) analyzed the factual circumstances out of which the original lawsuit arose. In so doing, it determined based on general guidelines provided in the prior appeal in this case, that attorney fees are not proper. Common Cause contends the factual basis

---

*Assigned by the Chairperson of the Judicial Council.
[1]*Common Cause* v. *Stirling* (1981) 119 Cal.App.3d 658 [174 Cal.Rptr. 200].

of the original lawsuit is secondary to the finding of improper governmental action under the Brown Act (Gov. Code, § 54950 et seq.) and to the public service performed by obtaining an appellate court decision clarifying several important matters under the Brown Act.

The trial court found the Brown Act had been violated and neither side has questioned that determination on this appeal. Both this opinion and the prior opinion focus on the issue of attorney fees cognizant of the Brown Act violation.

Government Code section 54960.5 gives a trial court discretion to grant "reasonable attorney fees" where a violation of section 54960 has been found. Section 54960 provides: "Any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency *or to determine the applicability of this chapter to actions or threatened future actions of the legislative body.*" (Italics added.)

The facts essential to a review in this action are summarized as follows: The San Diego City Council directed the filing of an eminent domain action regarding two parcels for park purposes. The actions were filed on December 10, 1977. On January 23, 1978, then Councilman Stirling asked the city manager to delay service of summons for one week to allow the city council to reconsider the condemnation proceeding. Thereafter the city manager expressed concern to Councilman Stirling regarding its failure to serve summons. A letter with the signatures of six of the nine council members dated January 31, 1978, was received by the city manager requesting that summons not be served.

On February 6, 1978, some five days later, a public meeting on the question of the condemnation action was noticed. On the 8th of February, two days after notice of the public meeting, a letter was received from members of the public requesting investigation of possible Brown Act violations involved in the January 31 letter. An exchange of letters between Common Cause and the city attorney indicated that they disagreed regarding the applicability of the Brown Act. On February 28, 1978, a public meeting of the city council was held. The council voted to instruct the city manager not to serve summons and to abandon the eminent domain action.

On March 27, 1978, Common Cause sent a memo to the city attorney contending the Brown Act had been violated by the January 31 letter. The memo further requested the city attorney advise the city council that further action by means of circulated letter agreements would be improper and a

violation of the Brown Act. On March 31, 1978, the city attorney responded stating no violation had occurred, refusing to advise the council as requested and reaffirming his prior position that the use of circulated letter decisions "is not uncommon." Approximately three months later, on June 20, 1978, Common Cause filed this action in declaratory relief seeking a declaration that the letter of January 31, 1978, constituted a violation of the Brown Act.

The result of the previous appeal in this case was a remand to allow the trial court to consider the propriety of an award of attorney fees under section 54960.5. In this court's previous decision after a discussion of attorney fees as applied to the Brown Act violations, the court stated: "Our comments, however, should not be interpreted as indicating that a trial court must award attorney's fees to a prevailing plaintiff in every Brown Act violation. A court must still thoughtfully exercise its power under section 54960.5 examining all the circumstances of a given case to determine whether awarding fees under the statute would be unjust with the burden of showing such inequity resting on the defendant. For example, in *Aho* v. *Clark* (9th Cir. 1979) 608 F.2d 365, an order denying attorney's fees under the Civil Rights Act was affirmed because the award of fees might have altered the consequences of the settlement reached by the parties, defendants were already in the process of remedying the program at issue and attorney's fees were not essential to attract competent counsel. [Citations.] Without limitation, some other considerations which the court should weigh in exercising its discretion include the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit." (*Common Cause* v. *Stirling, supra,* 119 Cal.App.3d at p. 665.)

The trial court upon remand received points and authorities and declarations from both sides and held a hearing in regard to attorney fees. The trial court's written decision quoted this court's statement set forth immediately above and then found: "This Court has considered the suitability of an award of attorney's fees under Section 54960.5 in accordance with the principles stated by the appellate court in its decision.

"This Court finds the lawsuit was unnecessary. The 'action taken' by the January 31, 1978 letter was considered by the City Council at a public hearing eight days later. By the time the lawsuit was filed, the City Council had voted in a public hearing to abandon the eminent domain proceedings. This procedure, as compared to the use of a letter, was the appropriate course of action and was taken long before the lawsuit was initiated.

"This Court finds there was no injury to the public. All of the matters contained in the January 31, 1978 letter were eventually discussed by the

City Council in a public session. There was no effort to hide the action of the City Council members, and the matter was brought to the attention of the public promptly.

"This Court finds the problem created by the January 31, 1978 letter was solved by other means. The City Council decision to abandon the eminent domain proceedings was the official 'action taken' and was done at a public meeting.

"This Court finds there was no likelihood of recurrence. This Court had previously concluded that the letter was not the normal procedure. There were no allegations of any concerted effort to avoid the law generally.

"This Court finds the public benefit from the legal action here was not of a substantial proportion even on a local community level such as would require the award of attorney's fees.

"This Court has re-examined all the circumstances in the instant case to determine whether awarding fees under Section 54960.5 would be unjust with the burden of showing such inequity resting on the defendants. This Court concludes the defendants have carried their burden, and that no fees should be awarded under Section 54960.5 or on appeal."

In *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829 [160 Cal.Rptr. 465], the court held, in determining the propriety of attorney fees, trial courts are empowered and expected to determine societal importance of the rights litigated, the significance of the benefit, and the degree of public versus private benefit obtained through the lawsuit. The court then states: "Determination of the existence of these three pivotal elements is to be entrusted to the trial court's discretion (cf. *Woodland Hills, supra,* 23 Cal.3d at pp. 935-943). To warrant reversal on the ground of abuse of discretion ' ". . . it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice," ' but discretion may not be exercised whimsically and, accordingly, reversal is appropriate 'where no reasonable basis for the action is shown.' (6 Witkin, Cal. Procedure, Appeal, *supra,* §§ 242-244, at pp. 4234-4235.)" (*Id.,* at pp. 836-837.)

Conversely, Common Cause contends that where a case is submitted on stipulated facts the appellate court should independently review the trial court's findings. (*Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 893-894 [122 Cal.Rptr. 249].) Common Cause states that the trial was upon stipulated facts, no oral testimony was taken and no evidence was presented at the hearing on the applications for

attorney fees other than the declarations proffered by Common Cause. (The findings of fact and conclusions of law[2] recite "evidence both oral and documentary was received pursuant to stipulated facts on behalf of all parties, and the cause was argued and submitted for decision." This court does not have any minutes from the trial court proceeding. Based on the trial court's introduction to the findings of fact and conclusions of law, it appears that oral testimony was received as a part of the proceedings.)

Common Cause generally contends the trial court's focus should have been on the overall enforcement of the Brown Act and to a lesser extent the timing and interrelationship of the activity leading to the trial court finding that the Brown Act was violated. In this regard Common Cause stresses that the city attorney maintained, even after the city council abandoned the eminent domain proceedings, that no violation of the Brown Act was involved in the letter of January 31, 1978. The city attorney had previously discussed the January 31 letter and in a letter response to inquiring individuals stated: "I am advised by the parties signatory to the letter of January 31, 1978 to Mr. McKinley that the letter, although initiated by Councilman Stirling, was circulated by a member of his staff to the other signatories. No meeting or decision as such occurred and in my view this action did not violate any provision of the Brown Act. Furthermore, it is not uncommon for actions to be commenced in this manner. The result is a discussion in an open meeting of our City Council and, on occasion, a decision. This type of open meeting decision is clearly what is contemplated by the Brown Act."

Thus at the time Common Cause filed the present action, the city attorney had twice stated no Brown Act violation was involved and had indicated that the use of a letter signed by a majority of the council to initiate city action was not an uncommon occurrence. With this state of affairs in mind, Common Cause concluded that the filing of a declaratory relief action was appropriate.

Thereafter the trial court found as stated above specifically including that there was no likelihood of a recurrence of the use of a letter signed by a majority of the council to delay governmental action previously approved. Although at the conclusion of the first trial, the trial court found "A letter such as the January 31, 1978 letter was not the normal procedure according to City Manager Hugh McKinley. Nor does Councilman Stirling have any knowledge of a similar letter being directed to the City Manager in this

---

[2]The court has reviewed the clerk's transcript in the first appeal (4 Civ. 22746) and as necessary considered the trial court's findings of fact and conclusions of law, the stipulated facts and order, and correspondence to and from the San Diego City Attorney.

manner." This finding is contradicted by the letter of the city attorney. The only support in the record for such finding is Mr. McKinley's declaration included as a part of the stipulation of fact presented to the trial court.

From the view of Common Cause the necessity for filing this action was to preclude further Brown Act violations. The lawsuit could have been avoided had the city attorney responded to the Common Cause letter of March 27, 1978, by agreeing to advise the city council members not to take future action by means of circulated letter and/or acknowledging the previous action did violate the Brown Act. The city attorney refused to do either of these and, in fact, emphasized his belief the procedure was perfectly proper. Thus, there was reason to believe there would be continuing use of circulated letter agreements without judicial intervention. The mere fact the city manager and one councilman did not believe actions were taken or instituted by circulating jointly signed letters begs the question. It shows neither that such letter action had not been directed to persons other than the city manager in the past nor conclusively shows that they had not on occasions even gone to that official.

The lawsuit was not brought for the purpose of having any effect upon the action previously taken by the city council, it was brought for the purpose of judicially determining the use of internally circulated letters among council members as a vehicle for governmental action violated the Brown Act and also to insure that this illegal procedure not occur in the future. The Common Cause filing was in good faith and intended to carry out the strong public policy of open governmental meetings embodied in the Brown Act.

██  While the trial court herein has carefully reviewed the material presented to it, this court finds that the trial court's discretion was abused in denying fees on the basis of a lack of public benefit. In the absence of the filing of this lawsuit, neither Common Cause nor any other person concerned with the actions of the San Diego City Council could be assured that further violations of the Brown Act in the same manner as the January 31, 1978, letter would not occur.

While the trial court may well be correct that there will be no recurrence, this does not support the conclusion that the public benefit from Common Cause's action was not sufficient to support an award of attorney fees. The benefit obtained through the lawsuit was not exclusively for Common Cause. The action was filed for the public benefit and the conclusion that the use of the circulated letters constituted a Brown Act violation supports a grant of attorney fees.

The trial court has previously found "If an award would be authorized for fees and costs in this proceeding, the sums of $14,832.30 for fees and $467.63 for costs would be a reasonable and proper amount." That amount of fees and costs should now be awarded.

Staniforth, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied October 21, 1983.