[No. D037323. Fourth Dist., Div. One. Mar. 5, 2002.]

MELVIN SHAPIRO, Plaintiff and Respondent, v.
SAN DIEGO CITY COUNCIL, Defendant and Appellant.

## COUNSEL

Casey Gwinn, City Attorney and Leslie J. Girard, Assistant City Attorney, for Defendant and Appellant.

Charles Wolfinger for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—The defendant San Diego City Council (City Council) appeals a judgment issued under the Ralph M. Brown Act (Brown Act) (Gov. Code,[1] § 54950 et seq.) to compel it to comply with certain duties under the Brown Act in closed session discussions with its real estate negotiators, concerning the posting of agenda items and the restriction of discussion within such closed sessions to the posted agenda items. (§§ 54956.8, 54954.5, subd. (b), 54954.2, subd. (a).) This action was brought by plaintiff and respondent Melvin Shapiro, seeking declaratory and injunctive relief to require fuller disclosure of the items under discussion in the context of real estate negotiations involving the overall large redevelopment project to create a baseball ballpark in the East Village section of the City of San Diego (the City), as initiated by a 1998 voter-approved proposition.

On appeal, the City Council contends the trial court exceeded the scope of its authority in ordering injunctive relief, and misapplied the Brown Act statutory scheme in ruling upon the scope of the disclosures to be made in

---

[1]All statutory references are to the Government Code unless otherwise specified.

connection with closed session real estate negotiations and the scope of the discussions that could take place in such closed sessions. On de novo review of the statutory issues presented, and after reviewing the record, we conclude the trial court's decision was well within the scope of its authority and fully justified by the record. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In *City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 389-390 [103 Cal.Rptr.2d 269], this court set out the basic factual background of the ballpark redevelopment project giving rise to this litigation: "In November 1998, the City's voters approved Prop. C by approximately a 60-40-percentage margin, authorizing the City to enter into an MOU [memorandum of understanding] with, in particular, the [San Diego] Padres. Prop. C and the MOU it authorizes provide for a public-private partnership between the Padres, the City and redevelopment entities to build a new major league ballpark as part of a larger redevelopment project in Centre City East in downtown San Diego . . . . Prop. C also authorizes the city council to amend or modify the MOU, in the best interests of the city entities, 'only if any such amendment or modifications do not materially: 1) decrease the rights or increase the obligations of the City; 2) increase the financial commitments of the City; or 3) decrease revenue to the City.' " (Fn. omitted.)[2]

Subsequently, in March 1999, the City Council approved key agreements and issued resolutions implementing the MOU by making findings that the Padres had provided sufficient assurances as required by the MOU, such that approval could be granted for the costs of land acquisition, parking facilities and infrastructure, and environmental approvals. Agreements were also reached regarding the San Diego Unified Port District's investment in the project, the Padres' financial commitments, development agreements and financing, related revenue projections, and interim funding pending the issuance of bonds. Again in January 2000, additional resolutions and agreements were approved regarding land acquisition, costs for infrastructure and parking facilities, a use and occupancy agreement for the ballpark, land use restrictions for the park near the ballpark, and an extension of the Qualcomm Stadium lease.

---

[2]This court granted the City Council's request to take judicial notice on appeal of the MOU and also a number of subsequent resolutions by the City Council and related agreements and documents. Those transactions and agreements were discussed in the lower court in this case and the City Council offers them here to show the complex nature of those agreements, which include the ballpark project implementation agreement, a joint use and management agreement, materials relevant to a proposed park-like shopping district, and an agreement for the extension of the partial use and occupancy agreement for Qualcomm Stadium. (Evid. Code, § 459.)

The allegations of the complaint now before us are that the City Council, between December 1998 and October 1999, carried out a number of closed session meetings dealing with negotiations for real estate acquisitions pursuant to the redevelopment plan, and that such meetings were inadequately noticed and exceeded the scope of the notice given. The City Council posted agendas for 16 closed sessions from January through October 1999 that contained the following single-item agenda description: "In the matter of authorizing the City Manager to negotiate with designated representatives from the San Diego Padres and the San Diego Unified Port District regarding real property interests in the East Village area of downtown San Diego, and at Qualcomm Stadium in the City of San Diego." Other posted agendas for two meetings gave this description: "In the matter of giving direction to the City Manager on behalf of the City of San Diego regarding real estate interests in the Centre City East area of downtown San Diego." Plaintiff argues these were inadequate descriptions under the Brown Act, because they did not adequately designate specific parcels of property and specific transactions.

The complaint further alleges that the closed session meetings included substantive discussions that greatly exceeded the scope of the agenda items noticed, because they were not directly related to a purchase, sale, lease, or exchange of specific real property by or for the City. These were alleged to include financing issues dealing with the transient occupancy tax, real estate issues belonging to parties other than the City, and other issues concerning the MOU. Declaratory and injunctive relief was sought on the basis that the public had a right to know what was going on in closed session and that the City Council was not complying with its obligations under the Brown Act.

The matter went to trial and the trial court conducted an in camera examination of confidential minutes prepared by the City Council of the challenged closed sessions, to determine whether the business that was conducted at the closed sessions had been properly noticed and was within the scope of the disclosed agenda items.[3] Subsequently, the trial court issued a statement of decision stating that it had reviewed the published agendas and the confidential minutes for the closed sessions and concluded that the City Council had violated both the letter and the spirit of the Brown Act. The trial court observed that the Brown Act was enacted to ensure that in doing the people's business, government should deliberate in public. Judgment was entered accordingly, including declaratory relief on both of the above issues as follows:

"1. The defendant City Council of the City of San Diego's (defendant City Council's) practice of posting agendas for closed sessions on the ballpark

---

[3]The City has lodged with this court sealed copies of the City Council minutes of its closed sessions regarding the real estate negotiations at issue here.

project, which contain a single item agenda description ('In the matter of authorizing the City Manager to negotiate with a designated representative from the San Diego Padres regarding real property interests in the East Village area of downtown San Diego, and at Qualcomm Stadium in the City of San Diego') and which do not identify the separate items of business to be discussed in the closed session, and its continuing contention that such practice complies with the Brown Act, violate its duty under section 54954.2, subdivision (a) to post an agenda containing a 'brief general description of each separate item of business to be transacted or discussed at the meeting.'

"2. The defendant City Council's practice of posting agendas for closed sessions pursuant to the safe harbor provision in section 54954.5, subdivision (b), which do not contain the names of the negotiators for the City to be attending the closed session and its continuing contention that such practice complies with the Brown Act, violate its duty under section 54954.5, subdivision (b) to specifically name the negotiators for the City of San Diego attending the closed session.

"3. The defendant City Council's practice of failing to identify in an open and public session before each session closed pursuant to section 54956.8, its negotiators, the real property under negotiation and the persons with whom its negotiators may negotiate for each item of business, and its continuing contention that such practice complies with the Brown Act, violate its duties under section 54956.8[, second paragraph] and section 54957.7, subdivision (a) to identify its negotiators, the real property under negotiation and the persons with whom its negotiators may negotiate for each item of business in an open and public session before each session closed pursuant to section 54956.8.

"4. The defendant City Council's practice of discussing the topics in sessions closed pursuant to section 54956.8 that are not instructions to its negotiators regarding price and terms of payment for the purchase, sale, exchange or lease of specific real property by or for the City of San Diego and its continuing contention that such practice complies with the Brown Act, violate its duty to limit discussions at such a closed session to instructions to its negotiators regarding price and terms of payment for the purchase, sale, exchange or lease of specific real property by or for the City of San Diego under section 54956.8.

"5. The defendant City Council's discussion of the following topics in closed sessions on the dates specified, is outside the scope of and so violates its duty under section 54956.8 to limit topics to instructions to its negotiators

regarding the price and terms of payment for the purchase, sale, exchange or lease of specific real property by or for the City of San Diego:

| "Closed session | Improper topics |
| --- | --- |
| "Dec. 1, 1998 - | briefing on land acquisition matters, design work of architect engineers, and infrastructure and parking developments |
| "Dec. 8, 1998 - | general MOU discussion |
| "Jan. 11, 1999 - | authority to hire ballpark manager |
| "Jan. 19, 1999 - | need to hire a project director for the ballpark project |
| "Feb. 16, 1999 - | capping interim expenses and environmental impact report (EIR), issues of alternative sites, traffic and parking |
| "Mar. 30, 31, 1999 - | financing of the ballpark project |
| "Jun. 29, 1999 - | naming rights in the ballpark, pending litigation |
| "Aug. 3, 1999 - | EIR |
| "Sept. 14, 1999 - | homeless and effects of redevelopment on homeless |
| "Sept. 28, 1999 - | obtaining consultants." |

The judgment then includes a prohibitory injunction that closely tracks each of the specific declaratory relief findings. First, the City Council is enjoined from violating its duty under section 54954.2, subdivision (a) to post an agenda containing a "brief general description of each item of business to be transacted or discussed at the meeting." Second, the City Council is enjoined from violating its duties under section 54956.8, second paragraph and section 54957.7, subdivision (a) to identify its negotiators, the real property under negotiation and the persons with whom its negotiators may negotiate for each item of business, in an open and public session before each closed session, pursuant to section 54956.8. Third, the City Council is enjoined from violating its duty to limit discussions at such a closed session to instructions to its negotiators regarding price and terms of payment for the purchase, sale, exchange or lease of specific real property by or for the City under section 54956.8. Also, certain violations were found through the City Council's previous discussions of certain enumerated topics, as listed in the statement of decision, as outside the scope of and thus a

violation of its duty under section 54956.8 to limit topics to instructions to its negotiators regarding the price and terms of payment for the purchase, sale, exchange or lease of specific real property by or for the City.[4]

Review hearings were held to evaluate the compliance with the injunction, and the record has been augmented to include those reporter's transcripts. At one such hearing, the trial court advised the City's attorneys that it would be well advised to tape-record its closed sessions if it conducted any closed sessions on real estate negotiation or financing of the ballpark project, in order to avoid any appearance of noncompliance with the court's orders.

The City Council appeals the judgment.

## DISCUSSION

The City Council acknowledges that since this action was initiated, it has changed certain aspects of its practices under the Brown Act with respect to the amount of information to be posted prior to a closed session in this real estate negotiation context. Since November 1999, the City Council has agreed (1) to post the names of its specific negotiators on the agenda preceding a closed session, (2) to hold an open session before each closed session to disclose its negotiators, the real property under negotiation and the persons with whom its negotiators may negotiate for each item of business (§ 54956.8), and (3) to disclose whether price, terms of payment, or both are under negotiation in a specific context. (§ 54954.5, subd. (b).) The City Council also admits that declaratory relief was properly issued here to that extent.

However, it continues to press the following issues on appeal: the injunctive relief ordered lacks a legal basis under the Brown Act or a factual basis in the record; the trial court erroneously ordered that disclosure of agenda items take place in excess of the safe harbor provisions of section 54954.5; and the discussions taking place in a closed session should be able to include matters "reasonably related" to those specified in the posted agenda items. We discuss these remaining contentions separately.

---

[4] As we will next explain, since this action was filed, the City Council has changed certain aspects of its practices under the Brown Act with respect to the amount of information to be disclosed prior to a closed session in this real estate negotiation context.

I

*Propriety of Injunctive Relief: Time of Violations*

A

*Standards of Review and Contentions on Appeal*

■ The trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 952 [196 Cal.Rptr. 45].) Such continuing relief by injunction operates in the future. (*Ibid.*) A reviewing court will exercise its independent judgment when it is required to interpret and apply a statute where the underlying facts are not in dispute. (*Ibid.*)

However, to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, an appellate court will review such factual findings under a substantial evidence standard. Our power in this regard "*begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

■ In this case, although the majority of the facts are undisputed, the trial court had to examine the minutes of the closed sessions and receive a declaration from an assistant city attorney in order to evaluate the City Council's continuing contention that its practices comply with the Brown Act, with respect to the amount of information required to be posted before it may hold a closed session regarding real property negotiations, and what the proper scope of discussion in such a session may be. These continuing contentions were relevant to the trial court's assessment of the need for continuing relief by injunction, to operate in the future, in order to assure the City Council's compliance with the letter and spirit of Brown Act requirements. As defined by Code of Civil Procedure section 525, an injunction is a writ or order requiring a person to refrain from a particular act. This action was brought under section 54960 by Shapiro, as an "interested person," for injunctive or declaratory relief "for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to actions or threatened future action of the legislative body . . . ." (*Ibid.*)

The City Council first contends that although the trial court may have been justified in issuing declaratory relief about the alleged violations of the Brown Act, injunctive relief was not proper because "relief under Section 54960 (a) must be predicated upon a finding that present violations of the Act are occurring, or that future violations of the Act are threatened," and there was no such finding here. Instead, the trial court made a finding of a past practice, coupled with a reference to the City Council's continuing contention as to the validity of that practice, as justifying injunctive relief. The City Council further contends that since a companion section, section 54960.1, allows an agency to cure an alleged defect regarding notice of topics to be discussed at a closed session, no injunction was proper here for either of two reasons: (1) no action taken by the City Council on any topic related to the closed session has been set aside as invalid, under the cure provisions, and/or (2) because the City Council has agreed to change its practices in some respects. Accordingly, the City believes there can be no showing of any present or threatened future violations of the Brown Act.

It is true that the City Council has agreed to change its practices regarding the amount of information to be posted prior to a closed session in this real estate negotiation context. Specifically, the City Council agrees it must post the names of its specific negotiators on the agenda preceding a closed session, and must hold an open session before each closed session to disclose certain information. (§ 54956.8.) It no longer contests that it must disclose whether price, terms of payment, or both are under negotiation in a specific context. (§ 54954.5, subd. (b).)

Nevertheless, the City Council continues to contend on appeal, as it did at trial, that injunctive relief is not justified to prevent the City from posting agendas for closed session that fail to comply with the requirements of a brief general description of each item of business to be transacted or discussed. (§§ 54954.2, subd. (a), 54954.5, subd. (b).) Similarly, the City Council continues to contend the trial court had no authority to prohibit it from discussing topics in closed sessions which go beyond instructions to its negotiators regarding purchase or sale price and terms of payment of specific real property. (§ 54956.8.) Also, the City Council contends the court could not properly prohibit it from discussing any topic within a closed session that was not contained as a separate item of business in the posted agenda for that section. (§ 54954.2, subd. (b), referring to emergency situations, previous items of business that were continued within five days for action at a particular meaning, or a need for immediate action subsequent to the posting of the agenda.) Accordingly, this dispute is not moot, and issues remain as to the degree of compliance required under the Brown Act.

B

*Application of Brown Act Rules*

In *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324 [87 Cal.Rptr.2d 813] (*Kleitman*), the Court of Appeal set out fundamental background information about the Brown Act. Its adoption was intended " 'to ensure the public's right to attend the meetings of public agencies. (§ 54950.)' [Citation.] Accordingly, the Brown Act requires that the legislative bodies of local agencies, including city councils, hold their meetings open to the public except as expressly authorized by the Act. [Citations.] The Act authorizes closed sessions to be held with regard to certain matters. [Citations.] [¶] One of the matters which may be discussed in a closed session is real property negotiations. The Brown Act expressly provides that 'a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease.' (§ 54956.8.)"[5] (*Kleitman, supra,* 74 Cal.App.4th at p. 331, fn. omitted.)

Section 54960 is the main enforcement section of the Brown Act, providing that "any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of" the act "by members of the legislative body of a local agency or to determine the applicability of" the act "to actions or threatened future action of the legislative body . . . ."

In *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 526, fn. 6 [85 Cal.Rptr.2d 257, 976 P.2d 808] (*Regents*), the Supreme Court evaluated a former version of section 11130, subdivision (a), as found in the Bagley-Keene Open Meeting Act (§ 11120 et seq.), which contained the same type of defining language as here, i.e., "any interested person may commence an action . . . for the purpose of stopping or preventing violations or threatened violations of" the act "by members of" a "[governmental] body," or "to determine" the act's "applicability . . . to actions or threatened future action" by such persons. The issue before the Supreme Court was whether the right of action granted by section 11130, subdivision (a) extended only to present and future actions and violations and not to past ones.

---

[5]As a commentator referenced by the court in *Kleitman*, explained: " 'The need for executive [closed] sessions in this circumstance is obvious. No purchase would ever be made for less than the maximum amount the public body would pay if the public (including the seller) could attend the session at which that maximum was set, and the same is true for minimum sale prices and lease terms and the like.' (Schwing, Open Meeting Laws (1994) Executive Sessions, § 7.76, pp. 416-418.)" (*Kleitman, supra,* 74 Cal.App.4th at p. 331.)

The court concluded, "the provision's right of action extends only to present and future actions and violations and not past ones." (*Regents, supra,* 20 Cal.4th at p. 524.) The facts before the court involved a request by the plaintiff under the Bagley-Keene Open Meeting Act for relief including a declaration that the defendant governmental body (the Regents of the University of California) violated the act by making a collective commitment or promise to approve certain controversial resolutions, prior to a noticed, open, public meeting, and related relief to invalidate the resolutions as approved. This collective commitment or promise was evidently a one-time event and the plaintiff did not show any such continuing course of conduct. (*Id.* at pp. 515-516, 536.) (Later, the legislation thus interpreted was amended by the Legislature to undo this ruling by the Supreme Court; Stats. 1999, ch. 393, § 6, amending § 11130, subd. (a).)

In reaching its conclusions, the Supreme Court examined previous case law arising under the Brown Act, pertaining to section 54960, subdivision (a), the enforcement section. The Supreme Court stated that previous Court of Appeal decisions interpreting this section have assumed or asserted that this provision extends to past actions and violations as well as present and future ones—but, evidently, *"only as to past actions and violations that are related to present or future ones. [Citations.] None, however, actually considers whether it does so."* (*Regents, supra,* 20 Cal.4th at p. 526, fn. 6, italics added.) The Supreme Court then commented, "Be that as it may, there is no indication that any assumption or assertion in these decisions that section 54960(a) possesses a past orientation gave rise to a belief on the part of the Legislature that section 11130(a) possesses one as well." (*Ibid.*)

From the above discussion we may conclude that (1) our case is factually distinguishable, because it involves not a one-time "offense" or alleged violation, but a legislative body's continuing contention that its practices comply with the Brown Act, with respect to the amount of information required to be posted before it may hold certain closed sessions, as well as what the proper scope of discussion in such sessions may be; and (2) so long as the allegations and proof of the legislative body's practices extend to *"past actions and violations that are related to present or future ones,"* the Brown Act provisions are brought into play to authorize and justify injunctive relief. That is the case here, where the City Council has staked out a position that the trial court had no authority to prescribe the manner in which it should comply with the Brown Act, by posting agendas for closed sessions containing brief general descriptions of each item of business to be transacted or discussed. (§§ 54954.2, subd. (a), 54954.5, subd. (b).) Also, the City Council continues to resist any judicial direction not to discuss topics in closed sessions which go beyond instructions to its negotiators regarding

purchase or sale price and terms of payment of specific real property. (§ 54956.8.) Also, although the City Council contends the court could not properly prohibit it from discussing any topic within a closed session that was not contained as a separate item of business in the posted agenda for that section, under section 54954.2, subdivision (b), it has not made any serious contention that the special circumstances listed in that section apply here (referring to emergency situations, previous items of business that were continued within five days for action at a particular meeting, or a need for immediate action discovered subsequent to the posting of the agenda).

In a different procedural context, this court ruled in *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024 [65 Cal.Rptr.2d 833] (*CAUSE*) that a declaratory relief action brought under section 54960, subdivision (a) was ripe, as against a demurrer, where there was an actual controversy between the parties over whether a past Brown Act violation had occurred. (*CAUSE, supra*, 56 Cal.App.4th at pp. 1029, 1031.) We found evidence of such controversy in allegations that the City would engage in similar practices in the future and "also in city's failure to concede that the facts alleged by plaintiffs constitute a violation of the Brown Act or the city charter. [Citation.]" (*Id.* at p. 1030.) We cited to *Common Cause v. Stirling* (1983) 147 Cal.App.3d 518 [195 Cal.Rptr. 163] (*Common Cause*) for the point that "courts may presume that municipality will continue similar practices in light of city attorney's refusal to admit violation[.]" (*CAUSE, supra*, 56 Cal.App.4th at p. 1030.) For example, past actions may to some extent evince a relationship to present or future conduct, especially as in *Common Cause, supra*, 147 Cal.App.3d 518, where the past action was in fact an ongoing procedure from which the court could reasonably infer, in light of the city attorney's refusal to change that procedure, that there would be continuing or future threatened Brown Act violations.[6]

Under the plain language of section 54957.7, subdivision (a), a legislative body in a properly noticed closed session may consider only those matters covered in its statement at an open meeting of the item or items to be discussed in closed session. Subdivision (b) of the same section states that after any closed session, the legislative body shall reconvene into open session prior to adjournment and shall make any disclosures required by section 54957.1 of action taken in the closed session (e.g., approval of an

---

[6]In *Regents, supra*, 20 Cal.4th 509, the court called into question the authority of *CAUSE, supra*, 56 Cal.App.4th 1024 and *Common Cause, supra*, 147 Cal.App.3d 518. However, we believe those holdings remain viable, as was allowed by the Supreme Court, to the extent that the showing of past violations that was made related specifically to present or future ones. (*Regents, supra*, 20 Cal.4th at p. 526, fn. 6.)

agreement concluding real estate negotiations, within specified time frames). This section is a prime example of the spirit of the Brown Act, promoting openness in conducting the public's business, as referenced in the statement of decision. (See *Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 [268 Cal.Rptr. 624] [Where possible, statutory language should be read to conform with the spirit of the enactment as a whole].)

We believe that the trial court was justified in concluding that the City Council's conduct in pursuing its contentions that it may interpret and adjust the requirements of the Brown Act as it sees fit, in dealing with a particular project, clearly demonstrates that more than past violations have occurred or will reasonably probably occur in the immediate future. We conclude the Brown Act authorizes injunctive relief that is based on, in relevant part, a showing of *"past actions and violations that are related to present or future ones,"* and there was no abuse of discretion in the trial court's grant of injunctive relief against future such actions and violations. (*Regents, supra,* 20 Cal.4th at p. 526, fn. 6, italics added.) We accept the trial court's implied factual findings that there was a likelihood that such conduct would recur in the future and that injunctive relief was warranted. Moreover, our independent interpretation of the statutory scheme confirms that on an adequate factual basis, under section 54960, subdivision (a), injunctive relief may be issued "for the purpose of stopping or preventing violations or threatened violations of" the act, and therefore the section authorizes the injunctive relief afforded here.

II

*Propriety of Injunctive and Declaratory Relief Regarding Agenda Disclosures and Scope of Discussions in Closed Session*

Statutory exceptions authorizing closed sessions of legislative bodies are construed narrowly and the Brown Act "sunshine law" is construed liberally in favor of openness in conducting public business. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 682 [98 Cal.Rptr.2d 263].) Statutory language "must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]" (*Rudd v. California Casualty Gen. Ins. Co., supra,* 219 Cal.App.3d at p. 952.)

A reviewing court exercises its independent judgment when it interprets and applies a statute to underlying facts that are not in dispute. (*San Diego Union v. City Council, supra,* 146 Cal.App.3d at p. 952.) Here, the parties

acknowledge the underlying facts are largely undisputed. However, in order to interpret the statute and thus evaluate whether the City Council was justified in its continuing contention that its practices comply with the Brown Act, the trial court had to examine the minutes of the closed sessions. To the extent that factual inferences were drawn regarding the historical events that took place, this court on review of the judgment must defer to those factual inferences to the extent they are supported by substantial evidence in the record.

■■■ We first address the City Council's contention that the trial court erroneously ordered that disclosure of agenda items take place in excess of the safe harbor provisions of section 54954.5. We then turn to the argument that the legislative body's discussions that take place in a closed session should be able to include all matters "reasonably related" to those specified in the posted agenda items.

## A

### *Posted Agenda Information*

As explained in *Kleitman, supra,* 74 Cal.App.4th 324, a legislative body must meet certain notice requirements in the Brown Act before it may hold a closed session regarding real property negotiations: A public session must be held prior to the closed session, in which the real property which is the subject of the negotiations and the person with whom the negotiator will negotiate are both identified. (§ 54956.8.)

Next, section 54954.5, the "safe harbor" provision, provides that "For purposes of describing closed session items pursuant to section 54954.2, the agenda may describe closed sessions as provided below," and section 54954.2 shall not be deemed to have been violated if the closed session items were described in substantial compliance with the information provided for by the section, irrespective of format. Pursuant to section 54954.5, subdivision (b), as relevant to section 54956.8 (the "Conference with Real Property Negotiators" section), the following items must be disclosed:

"Property: (Specify street address, or if no street address, the parcel number or other unique reference, of the real property under negotiation)

"Agency negotiator: (Specify names of negotiators attending the closed session) (If circumstances necessitate the absence of a specified negotiator, an agent or designee may participate in place of the absent negotiator so long as the name of the agent or designee is announced at an open session held prior to the closed session.)

"Negotiating parties: (Specify name of party (not agent))

"Under negotiation: (Specify whether instruction to negotiator will concern price, terms of payment, or both)." (§ 54954.5, subd. (b).)

Section 54954.5, subdivision (b) is referred to as a "safe harbor" provision, to set certain minimum standards for disclosure of closed session agenda items. After the legislative body holds such a closed session, it must "reconvene into open session and make a public report of the actions taken during the closed session." (*Kleitman, supra,* 74 Cal.App.4th at p. 332, citing §§ 54957.1, 54957.7, subd. (b).)

The issue presented here is whether the City Council's compliance with the safe harbor provisions of section 54954.5, subdivision (b), precludes any requirement that further disclosures be made with regard to particular agenda items set for a closed session. The City Council's position is that the public could not have been misled about the subject of the closed session discussions here, due to the high profile nature of the ballpark project. It also takes the position that it was not possible at the time period that the closed sessions were held to include street addresses for parcel numbers, because the exact definition of the ballpark project had not yet been identified. The City Council claims that it used the most unique reference possible, i.e., a reference to a specific neighborhood with specific boundaries, in the agenda. It contends that since the safe harbor language of section 54954.5, subdivision (b) does not expressly require the City to identify topics that go beyond a purchase or sale transaction into related areas, such as transient occupancy taxes or environmental impact report mitigation requirements, then no such disclosures should be required before closed sessions may be held to discuss different aspects of a complex overall real estate based transaction.

██  As a matter of statutory interpretation, all these closed session rules must be read in conjunction with the more general rules in the Brown Act applicable to the conduct of public business. (See *Rudd v. California Casualty Gen. Ins. Co., supra,* 219 Cal.App.3d at p. 952.) ██ For example, section 54954.2, subdivision (a), applicable to regular meetings, requires the legislative body to post an agenda containing a "brief general description of each item of business to be transacted or discussed at the meeting, *including items to be discussed in closed session.*" (Italics added.) It also provides that no action or discussion shall be undertaken on any item not appearing on the posted agenda, except that members of the legislative body or its staff may ask questions for clarifications or report on related activities, etc. (*Ibid.*)

An opinion of the Attorney General sheds some light on the sunshine law in this context. In 1990, the Attorney General was asked to comment on

whether the adoption by an open space district of a resolution listing all parcels of real property larger than 20 acres within its planning area (i.e., some 700 parcels) as the potential subject of negotiation for purchase would satisfy disclosure requirements under the Brown Act for a closed session regarding the purchase of any one or more of such parcels. (73 Ops.Cal.Atty.Gen. 1, 3-5 (1990).) The author concluded that such a procedure for publication of closed session agenda items was not reasonably consistent with the general purpose and intent of the Brown Act: "As expressed in its declaration of public policy (§ 54950, *supra*), the legislative purpose was to foster the right of the people to remain informed so that they may retain control over the instruments they have created. In this regard, we fail to perceive the practical utility of the proposed list of properties and owners. It is, of course, well established that the Brown Act should be interpreted liberally in favor of its open meeting requirements, while the exceptions to its general provisions must be strictly, or narrowly, construed. [Citation.] Section 54956.8, beginning with the words, '[n]otwithstanding any other provision of this chapter,' is an exception within the meaning of sections 54953, subdivision (a), and 54962 . . . to the general rule that the meetings of legislative bodies of local agencies shall be open and public." Accordingly, the opinion concludes that such a generic listing was inadequate because it was not sufficiently focused upon the particular parcels for which purchase was realistically an option. (73 Ops.Cal.Atty.Gen., *supra*, 1, 3-5.)

This analysis leads us to conclude that the City Council's argument is flawed. The City Council contends that simply because the ballpark project is a complex real estate-based transaction, many complex issues will inevitably arise, and it cannot be reasonably be foreseen when or where they will require discussion. The City Council says that since the safe harbor language of section 54954.5, subdivision (b) does not require the City to identify topics that go beyond a purchase or sale transaction into related areas, then it need not provide any such notice, even if such things will inevitably come up in discussion as part of the overall consideration of whether to purchase certain properties, as part of the overall redevelopment transaction. The City Council contends it is unreasonable to require notice to be given of such topics as transient occupancy taxes or environmental impact report mitigation requirements, even though such factors are often important considerations in the decision of whether to carry out such a purchase transaction of real property, and are reasonably related to the subject purchase decisions.

We believe the City Council's view that no detailed disclosures should be required before closed sessions may be held to discuss a complex overall real estate based transaction is inconsistent with the express statutory requirements of section 54956.8 (real property which is the subject of the

negotiations and the person with whom the negotiator will negotiate must both be identified) and section 54954.2, subdivision (a) (the legislative body must post an agenda containing a "brief general description of each item of business to be transacted or discussed at the meeting, *including items to be discussed in closed session*" [italics added]). As was the case in the Attorney General opinion, concerning whether a certain disclosure was adequate under the Brown Act (i.e., that of 700 listed properties, one unnamed one might be a subject of a purchase or sale discussion), a generic listing is inadequate because it is not sufficiently focused upon the particular parcels for which purchase was realistically an option. (73 Ops.Cal.Atty.Gen., *supra*, 1, 3-5.) It does not constitute substantial compliance under the safe harbor provisions of section 54954.5, subdivision (b), because that section contemplates that a specific piece of property is under discussion. Where the project that the City Council is discussing in closed session goes beyond such a specific transaction, the requirements of section 54954.2, subdivision (a) are cumulative with the safe harbor provisions, because more than one "item of business to be transacted or discussed at the meeting, *including items to be discussed in closed session*" are involved. (*Ibid.*, italics added.)

We reject the City Council's argument that the particular "item of business" specified in section 54954.2, subdivision (a) is not a particular purchase transaction of specified real property, but instead is the giving of instructions to a negotiator. The City takes the position that the safe harbor provisions of section 54954.5, subdivision (b) are a more specific section and therefore control over the general section, section 54954.2, subdivision (a). However, this is so specific as to be meaningless. A negotiator has to be pursuing some specific transaction, which itself is the subject item of business that should be disclosed. A negotiator does not negotiate in a vacuum.

Moreover, this argument by the City Council concerning the required scope of disclosure on posted agendas for closed sessions under section 54956.8 is inextricably intertwined with its other argument, that merely because of the complexity of the transaction, a "rule of reason" must be applied to enable it to discuss in closed session any and all related topics that may arise in conjunction with a purchase or sale decision, where that purchase or sale decision has only generally been identified to the public through the agenda procedure. We therefore turn to that argument to complete our reasoning process.

## B

### *Scope of Discussions in Closed Sessions*

As presented here, the issue is whether it is a reasonable construction of the Brown Act to prohibit the City Council from discussing topics in closed

session, in conjunction with a particular real property purchase, etc. transaction, when no particular parcel has been identified in the disclosures for the session, and the subject real property is part of a larger transaction giving rise to complex issues. The City Council argues for a "rule of reason" to allow background discussions, questions and answers during closed session, if they are reasonably related to the purpose of giving direction to a legislative body's negotiator, even though a different project or proposed agreement would still remain outside the scope of the negotiations under way. The City contends that matters of importance for the agreement being negotiated must be allowed, even if that topic is not specifically set forth in the agenda for the closed session. For example, financing should be an exception to the disclosure requirement, according to the City.

In order to evaluate whether a proper scope of relief was afforded in this matter, we must focus upon the factual context and purpose of the closed sessions that were held here. In pertinent part, section 54956.8, provides: "Notwithstanding any other provision of this chapter, a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease. [¶] However, prior to the closed session, the legislative body of the local agency shall hold an open and public session in which it identifies its negotiators, the real property or real properties which the negotiations may concern, and the person or persons with whom its negotiators may negotiate. [¶] For purposes of this section, negotiators may be members of the legislative body of the local agency."

This section accordingly authorized the City Council to hold a closed session with its negotiator, prior to the purchase or other transaction of real property, to the extent that the local agency wished to grant authority to its negotiator regarding the price and terms of payment for the purchase/ transaction. On its face, section 54956.8 appears to grant a rather narrow scope of authority to the City Council in conducting such business, to determine what discussions are germane to the particular transaction in real property.

Also, section 54957.7, subdivision (a) specifies that a legislative body in a properly noticed closed session may consider only those matters covered in its statement at an open meeting of the item or items to be discussed in closed session. Subdivision (b) of the same section states that after any closed session, the legislative body shall reconvene into open session prior to adjournment and shall make any disclosures required by section 54957.1 of action taken in the closed session (e.g., approval of an agreement concluding real estate negotiations, as dependent on the stage of the approval process).

Under section 54954.2, subdivision (a), the legislative body must post an agenda containing a "brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session," and no action or discussion shall be undertaken on any item not appearing on the posted agenda, except that members of the legislative body or its staff may ask questions for clarifications or report on related activities, etc.

To support its position, the City Council refers to the need for a confidential bargaining position when dealing with sophisticated buyers and sellers in a high profile project, in order to give adequate instructions to the negotiator acting for the city. (§ 54956.8.) In support, the City Council relies largely upon a concurring opinion of Justice Brown in *Regents, supra,* 20 Cal.4th 509, suggesting that in the Brown Act context, the public need for access to information must be balanced against the public's right to the efficient administration of public bodies. There is a perceived value of confidentiality in effective policy deliberations, and the courts must draw fine lines in order to promote these equally important values. (*Id.* at pp. 541-543.)

Even assuming such a balancing process is appropriate in this instance, when we compare, as did the trial court, the published agendas with the confidential minutes for the closed sessions, we can only conclude that such a balance should be struck in favor of public disclosure in this instance, in compliance with both the letter and the spirit of the Brown Act. As found by the trial court, the agenda items noticed related only to City negotiations with designated representatives from the Padres and the Port District regarding real property interests in the East Village area, or Qualcomm Stadium, or the Centre City East area. Under the plain language of section 54956.8, the City Council gave notice of its intent to hold a closed session with its negotiator, prior to the purchase or other transaction of real property, to the extent that the local agency wished to grant authority to its negotiator regarding the price and terms of payment for the purchase/transaction. Under section 54954.2, subdivision (a), members of the legislative body or its staff may ask questions for clarifications or report on related activities, etc. However, there is nothing in the statutory scheme that grants an unlimited scope of authority to the City Council, in conducting such business, to determine what discussions it may deem to be related background information that is essential to the particular transaction in real property, for purposes of giving instructions to a negotiator about that transaction.

In this case, the actual discussions in closed session extended to topics such as briefing on land acquisition matters, design work of architects, engineers, and infrastructure and parking developments. Also, such topics as

capping interim expenses, environmental impact report considerations, issues of alternative sites, traffic, naming rights, expert consultants and staff were discussed. Such policy considerations as the impact of the ballpark project on the homeless were discussed at closed session. All these topics confirm the City's position that this redevelopment project, as memorialized in the MOU and related agreements, is indeed a complex real estate based transaction. That characterization, however, does not negate the requirements of the Brown Act when agenda items are noticed concerning real estate interests, such as purchase and sale of real property on which the anticipated development will be located.

Rather, the closely related issues of the agenda items to be disclosed, including for a closed session, and the scope of the legislative body's discussions that may take place within such specific closed sessions, must be considered together. The scope of the permissible discussion in the closed sessions should be defined by the notice given in the agenda and the public announcements, together with the rule against discussing items not identified in the agenda. (§§ 54954.2, subd. (a)(2), 54957.7, subd. (a).) Those statutory constraints must be read together with section 54956.8, which provides a narrowly defined exception to the rule of open meetings, for the purpose of giving instructions to the negotiators concerning a particularized and realistically anticipated transaction that the City may complete, whether as an individualized transaction or as part of a larger one. The City Council cannot claim substantial compliance under the safe harbor provisions of section 54954.5, subdivision (b), when its anticipated project discussions exceed the scope of the safe harbor notice provisions, and do not involve a specific and identifiable piece of property under discussion, but rather range far afield of a specific buying and selling decision that the negotiator is instructed to work toward.

If we were to accept the City's interpretation of the Brown Act in this respect, we would be turning the Brown Act on its head, by narrowly construing the open meeting requirements and broadly construing the statutory exceptions to it. (See *Bell v. Vista Unified School Dist., supra,* 82 Cal.App.4th 672, 682.) That would be incorrect. We do not denigrate the important consideration of confidentiality in negotiations. However, we believe that in this case, the City Council is attempting to use the Brown Act as a shield against public disclosure of its consideration of important public policy issues, of the type that are inevitably raised whenever such a large public redevelopment real estate based transaction is contemplated. The important policy considerations of the Brown Act, however, must be enforced, even where particular transactions do not fit neatly within its statutory categories. In this case, the trial court reached an appropriate balance in applying the Brown Act to this particular set of circumstances.

## DISPOSITION

The judgment is affirmed. Costs are awarded to plaintiff and respondent.

Kremer, P. J., and Nares, J., concurred.