Filed 4/29/16  Winlock v. Williams CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| **COLETTE D. WINLOCK,**<br><br>        **Plaintiff and Respondent,**<br><br>v.<br><br>**PATRICE WILLIAMS,**<br><br>        **Defendant and Appellant.** | **A144742**<br><br>**(Alameda County<br>Super. Ct. No. RG15756037)** |

The trial court issued an injunction protecting Collette D. Winlock from Patrice Williams (Code Civ. Proc., § 527.6).  Patrice Williams appeals.  She contends: (1) insufficient evidence supports the issuance of the restraining order; and (2) there is not a reasonable probability of future harm.  We disagree and affirm.[1]

FACTUAL AND PROCEDURAL BACKGROUND

"We summarize the facts in the light most favorable to the judgment."  (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405 (*Brekke*).)

---

[1]     Unless noted, all further statutory references are to the Code of Civil Procedure. Winlock's failure to file a respondent's brief means we decide the appeal on the record, the opening brief, and Williams's oral argument, "reversing only if prejudicial error is shown." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334; Cal. Rules of Court, rule 8.220(a)(2).)

1

In 2014 and 2015, Winlock was the executive director of a "mental service agency." In 2014, Williams was an intern at the agency and the two women worked together. In January 2015, Winlock requested an injunction prohibiting Williams from coming near, or contacting, her. In her request (form CH-100), Winlock alleged Williams pursued a relationship with her; when Winlock told Williams a romantic relationship "was not possible[,]" Williams began sexually harassing her. In June 2014, Williams sent Winlock "sexually explicit emails" and text messages requesting "a relationship." When advised her behavior was inappropriate, Williams threatened to commit suicide, claiming Winlock "had rejected her." Williams continued to pursue an "inappropriate relationship" with Winlock and became angry when Winlock rejected her advances.

In October 2014, Williams attended an agency event "with intent to disturb the peace[,]" and brought "a promise ring and a check for $250" to Winlock's office. Around that same time, Williams "loitered" around Winlock's car, made coworkers uncomfortable by asking about Winlock, and filed a lawsuit against Winlock. Williams also sent Winlock emails threatening to make Winlock "pay for causing her pain." In January 2015, Winlock received a violent and threatening voicemail expressing "[g]ay bashing views." Williams alleged she was unsettled and "unsure of [her] safety when [Williams] is around" and feared Williams would harm her.

In her written opposition, Williams admitted sending Winlock sexually explicit emails and text messages, leaving Winlock a promise ring and a check, and appearing around Winlock's workplace in late 2014. Williams, however, claimed she attended the agency event in October 2014 "without any intent to act out" and denied leaving a threatening voicemail for Winlock in January 2015. Williams claimed she filed a lawsuit against Winlock because of "emotional stress" caused when Winlock "neglect[ed]" her. In one of several supporting declarations, Williams alleged she "would never purposely create any problems" for Williams.

At a March 2015 hearing on the injunction request, the court stated it had "read the e-mails that Ms. Williams allegedly sent to Ms. Winlock." Williams admitted sending

2

the emails, but denied leaving Winlock a threatening voicemail in January 2015. She urged the court to deny the injunction request. Winlock described Williams's "continu[ing] harassment" and testified Williams "shows up" at public events and "it's disruptive." Winlock noted the "threatening voice mail" she received in January 2015 was "very violent" and "concerning enough" that she filed a police report. Winlock believed Williams left the voicemail.

At the conclusion of the hearing, the court issued a three-year injunction (form CH-130) precluding Williams from contacting Winlock or coming hear her. The court explained, "I do believe Ms. Winlock and the evidence that she presented."

DISCUSSION

The Legislature enacted section 527.6 "'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment. [Citation.]" (*Brekke, supra,* 125 Cal.App.4th at p. 1412; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 648.) Section 527.6 enables "[a] person who has suffered harassment" — defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose" — to seek an injunction "prohibiting harassment as provided in this section." (§ 527.6, subds. (a)(1), (b)(3).) "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress" to the party seeking the injunction. (§ 527.6, subd. (b)(3).) A judge may issue an injunction pursuant to section 527.6 upon "clear and convincing evidence that unlawful harassment exists[.]" (§ 527.6, subd. (i).)

We uphold the injunction if there is any reasonable, credible evidence, contradicted or uncontradicted, supporting the court's findings and order. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in . . . section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of

3

the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Id.* at p. 762.)

Williams claims "there was not clear and convincing evidence presented at the hearing to justify" the injunction. This argument is based on Williams's self-serving factual recitation, which omits evidence supporting the injunction — much of which Williams admitted in her opposition and at the hearing — that Williams sent Winlock unwanted and sexually explicit emails and text messages, filed an unmeritorious lawsuit against Winlock, loitered at Winlock's place of business, and was disruptive at public events. Substantial evidence therefore supports the conclusion Williams exhibited a "knowing and willful course of conduct" directed at Winlock that "seriously alarm[ed], annoy[ed], or harasse[ed]" her, that "serve[d] no legitimate purpose." (§ 527.6, subd. (b)(3); *Brekke, supra,* 125 Cal.App.4th at p. 1413.)

The evidence also amply supports the conclusion that Williams's conduct caused Winlock substantial emotional distress and would cause a reasonable person such distress. (§ 527.6, subd. (b)(3); *Brekke, supra,* 125 Cal.App.4th at p. 1413.) Winlock filed a police report after receiving the threatening voicemail in January 2015, and she feared Williams would harm her. That Williams may have an explanation for her conduct or a different interpretation of the evidence does not demonstrate a lack of evidence supporting the injunction, particularly where the court indicated it believed "Winlock and the evidence that she presented." We may not reweigh the evidence or choose among alternative permissible inferences, and we do not substitute our deductions for those of the trial court. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

Finally, we reject Williams's claim that there was no reasonable probability she would "repeat any wrongful acts in the future." An injunction "should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332.) Here, given the nature of Williams's conduct towards

4

Winlock, the trial court reasonably concluded that, unless enjoined, Williams would continue to annoy and harass Winlock whenever the opportunity presented itself.

## DISPOSITION

The injunction issued on March 20, 2015 pursuant to Code of Civil Procedure section 527.6 is affirmed.  In the interests of justice, the parties will bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_____

Jones, P.J.



We concur:


_____

Simons, J.


_____

Needham, J.